STATE v. JESSE F. HOSKINS. and others.

*State and Federal Courts—Conflict of Jurisdiction.*

The Act of Congress (U. S. Revised Statutes, § 643) authorizing the re-
moval of civil suits and criminal prosecutions from a State Court to a
Circuit Court of the United States is constitutional; *Therefore*, where
a defendant in an indictment for an assault and battery made affidavit
that he was a Revenue Officer of the United States, and that the alleged
offence was committed under color of his office; *Held*, that the Judge
in the Court below committed no error in ordering further proceedings
in said Court to be stayed.

(RODMAN, J. *Dissenting.*)

INDICTMENT for Assault and Battery, tried at Spring Term,
1877, of GUILFORD Superior Court, before *Cox, J.*

The defendants, Jesse F. Hoskins, George J. Cronenberger
and John Starr were indicted for an assault and battery
upon one Levi Humble. They were arrested and gave bond
for their appearance, and on Saturday, the 3d day of March,
1877, before said Court convened (March 5th) they filed a
petition with the Clerk of the Circuit Court of the United
States for the Western District of North Carolina, praying
that the prosecution against them in the Superior Court
should be removed to the Circuit Court, pursuant to the pro-
visions of § 643, of the Revised Statutes of the United States.
On said 5th of March, a copy of an order removing the case
was duly served on the Clerk of the Superior Court, and
when the case was called, the defendants objected to further
proceedings in the State Court, on the ground that said
Court had no further jurisdiction, the order of removal hav-
ing already been served upon the Clerk thereof.

Upon issue joined on the question of law involved, and it
appearing that the defendants were officers of the Internal
Revenue Department of the United States, and it being

alleged that the offence with which they were charged was committed under color of their office, His Honor held that said Act of Congress was constitutional, and ordered the proceedings in the Superior Court to be stayed. From which judgment, *Strudwick*, Solicitor for the State, appealed.

*Messrs. D. G. Fowle, J. T. Morehead, John Gatling* and *W. H. Bailey* appeared with *The Attorney General*, for the State.

*Messrs. Ball & Gregory* and *R. C. Badger*, for the defendants.

READE, J. The preparation of the opinion in this case was assigned to our learned brother THE CHIEF JUSTICE, but on account of his protracted indisposition he was unable to undergo the labor, and therefore he turned the case over to me.

We quote such parts of the Constitution of the United States and of the Constitution of North Carolina as bear upon the questions involved in the case, in order that they may all be under the same view at the same time.

" The Congress shall have power to lay and collect taxes, &c." Const. U. S. Art. I, § 8 (1).

" To make all laws which may be necessary and proper for carrying into execution the foregoing powers." Const. U. S. Art. I, § 8, (17).

" The Constitution and the laws of the United States which shall be made in pursuance thereof  *  *  *  shall be the supreme law of the land, and the Judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding." Const. U. S. Art. VI, § 2.

" That every citizen of this State owes paramount allegiance to the Constitution and Government of the United

States, and that no law or ordinance of the State in contravention thereof can have any binding force." Const. N. C. Art. I, § 5.

" That this State shall ever remain a member of the American Union ; that the people thereof are part of the American Nation, &c." Const. N. C. Art. I, § 4.

There was much in the discussion before us upon the trite subjects of " State rights," and " Federal powers," which used to divide the politicians and statesmen, but we have no purpose to ally the Court ' with either school, or to express our individual opinion as to what *ought to be* the form of government ; we mean to declare only what we believe to be the proper construction of what is written.

In order to see what are the precise questions involved, we must state the facts :

The Congress under its power to "lay and collect taxes" passed the revenue law now in operation, the validity of which no one questions, although its propriety is very much assailed. The defendant was appointed by the United States authorities to collect United States taxes in North Carolina. While engaged in that business, and in the execution of his office, and by color thereof, he did what but for his office would have been an assault and battery, and a breach of the law of North Carolina. For that act he was indicted in the State Superior Court, and held for trial in that Court. The defendant thereupon filed his petition in the Circuit Court of the United States to have the case removed from the State Court to the United States Court, upon the ground that he was an officer of the United States, and that what he did was by virtue of his office. The Circuit Court of the United States made an order for the removal of the case, and His Honor, Judge Cox of the State Court, obeyed the order under that clause of the Constitution of the United States quoted above, which provides that "the Judges in every State shall be bound" by the supreme

law of the land," and from that order of Judge Cox, the State appealed to this Court.

The comprehensive question arising out of these facts is, was the order of Judge Cox a proper one ?

Let us first consider it as a question of *comity* :—The State, a sovereign, claims that the defendant has trespassed upon its rights; the United States, a sovereign, claims that the defendant was its officer and acting under its orders, and for the purposes of the demand assumes the responsibility of the act complained of, and demands its officer in order that it may investigate his conduct, and punish or protect him as he may deserve. Now what ought the State to do ?—ought it to hold the officer and punish him, although he was acting under orders, and is justified by his government? That would be pusillanimous. Sovereigns do not quarrel with *servants* but with sovereigns, when they are *angry.* And when they are *friendly* they defer to each other the control of their own servants. Wheaton's International Law, 209, 224, 225. So it is with neighbors—A and B are neighbors, and their children play on common ground, and the child of A trespasses upon the child of B. B does not try and punish the child but turns it over to A with the cause of complaint. If A will redress the wrong, well; if not, then the quarrel is with A and no longer with the child. Concede then that the State had a good cause of complaint against the defendant, yet the moment that the United States assumed the responsibility and demanded him as her servant, if in friendship, comity required his surrender to his master; if in anger, then the quarrel is with the master. But the case does not turn upon *comity* alone.

We have seen that Congress has power "to lay and collect taxes" and "to pass all laws necessary and proper to execute the power," and a law has been passed and an officer appointed to execute it, and that officer says he has been resisted. Now must not the United States protect its officer ?

What is the use of the power to lay the tax and to appoint the officer if he may not be protected? It is no answer to this to say, he may be protected when he does right, but not when he does wrong; for how can the United States know whether he has done right or wrong unless she can try him, and how can she try him unless he be delivered up on demand? It would seem to be too plain for discussion that the right to protect the officer is indispensable to the service and inseparable from the power of the government which appoints him. Nor is it an answer to say that the *State* will protect him if he deserves protection; for no one ever heard that one Government could entrust the execution of its laws, or the control of its officers to another Government however friendly. Governments could not remain friendly upon such relations.

But the case does not stand upon this *implied* right alone of the United States to protect its officers, but upon an express Act of Congress which is as follows: "When any civil suit or criminal prosecution is commenced in any Court of a State against any officer appointed under any revenue law of the United States, * * * on account of any act done under color of his office, or of any such law, * * * the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the Circuit Court next to be holden in the District where the same is pending, upon the petition of such defendant to said Circuit Court, and in the following manner, &c." United States Rev. Statutes, § 643.

It is not denied but is admitted by all, that that Act of Congress in *express terms* authorizes the removal and justifies the order of Judge Cox in this case. But then it is said that that Act is unconstitutional and void. And we now have to consider that question.

As preliminary we would remark, that if we were satisfied that His Honor was in error in holding the Act to be

-constitutional, we would still commend his prudence; for it is settled by all the authorities, that no Court not even the highest upon full consideration, ought to declare an Act either of Congress or the General Assembly unconstitutional, unless it is *"plainly"* so. And the Act in question substantially in the same form as now, having been upon our statute book for a half century, and repeatedly considered and never having been declared void by any Court or text writer, it would have been a judicial adventure, to make a conflict of jurisdiction between the State and the United States Courts. But we think His Honor was not only prudent but wise, and that his decision was right.

We invite attention to a short history of the Act in question, which we are able to give from the Act itself as enacted and re-enacted at different times and for different purposes. They will be found most conveniently by reference to 1 Abbott's United States Practice, and the United States Rev. Statutes. And we are also aided by an opinion of the Solicitor General of the United States endorsed by the Attorney General of the United States, filed in the case.

As early as the Judiciary Act of 1789, it was provided for the *removal* of causes from the State to the Federal Court *before trial* in certain civil suits; and for the "re-examination" of certain cases *after judgment* in the highest State Courts. In 1815, removals were provided for *before trial* in revenue cases, both in civil and criminal cases, except in *such* criminal cases as inflicted corporal punishment. *Note—* that here was the removal of criminal cases, which is now so stoutly denied.

For one purpose and another this provision for removal was repeatedly re-enacted until 1833, when the matter was brought most prominently forward, in order to meet the pretensions of nullification. It was brought before Congress by PRESIDENT JACKSON. It was elaborately discussed and fully considered by the ablest men which this country has ever produced. .

The Judiciary Committee of the United States Senate—WILKINS, WEBSTER, FRELINGHUYSEN, GRUNDY and MANGUM—reported the bill; MANGUM, dissenting. It was fully discussed and passed almost unanimously in the Senate and by a large majority in the House. That bill was not precisely but substantially the same as the Act of 1815, and the Act now under consideration of 1866. The Act of 1815 allowed the removal of all cases civil and criminal not involving corporal punishment. The Act of 1833 left out the exception and substituted any "suit or prosecution," and the Act of 1866 substituted "any civil suit or criminal prosecution."

It is not now denied that *civil* actions may be removed, but it is denied that *criminal* actions can be. Why not?—they are both expressly named in the Act. The objection is put principally upon two grounds:—First, that although the Act says criminal actions may be removed, yet it provides *how* civil actions may be removed, and does not provide *how* criminal actions may be removed. This is a mistake; and it is a little surprising that the learned counsel did not discover the fallacy of the argument which led them to that conclusion. They say that the Act provides that if the suit was commenced by summons, then it may be removed simply by *certiorari;* but if by *capias,* then by *habeas corpus;* and that this only applies to civil actions. But the truth is that it applies to both civil and criminal. It means that if the action, whatever it is, was by summons, so that the defendant is at large, a *certiorari* will bring the record, and the defendant can come himself. But if the action, whatever it is, was by *capias,* so that the defendant is in custody and cannot come, then there must be a *certiorari* to bring the record, and a *habeas corpus* to bring the defendant.

The second objection is, that it is a violation of the rights of the State; that the State has the right to try offenders

against her criminal law, and that she cannot be deprived of it; and that the United States has no right to try offences against State laws.

Here lies the fallacy and the danger. Every mind assents to the proposition that the United States has no jurisdiction to try offences against the State by her citizens, or in any manner to interfere in the police regulations of the State. In these matters the State is sovereign and supreme. The fallacy consists in supposing that the matter in hand has any thing to do with the State or the State with it. And the danger consists in the ease with which the people may be deceived by the fallacy, and irritated against the United States for the supposed aggression.

Let it be true, as often charged, that the United States Revenue Law is a bad one, and that its execution is still worse, and that it is oppressive altogether, yet North Carolina is not responsible for it. She did not pass it. She cannot repeal it. Nor can she or her citizens resist it. Any attempt to do so has always involved, and will always involve, the most hurtful troubles. Yet the remedy is plain. The law was passed and is executed by the United States. The United States is not a foreign government. It is *our* government, as much so as North Carolina is; we are represented in it; and we are its citizens. It can protect its citizens, it can punish its officers, and it can repeal bad laws. How puerile then it is, to regard the United States as a "*foreign*" government, and to look to North Carolina or any other government to protect us against its oppressions! As well might we appeal to Virginia to protect us against the aggressions of North Carolina!

In certain particulars, North Carolina is our government, supreme. In all matters in which there is no " federal ingredient," she is supreme. An instance of this is the laying and collecting of her own taxes by her own officers, out of

her own citizens. She acts precisely as if the United States was not in existence.

So there are particulars in which the United States is our government, supreme. In all matters in which there is a federal ingredient it is supreme. A familiar instance of which is the Post Office system, and so is the Revenue system. In such matters it acts as if there were no State in existence. The United States lays and collects its own taxes, by its own officers out of its own citizens. It does not lay a dollar of tax upon the State of North Carolina, nor upon any citizen of North Carolina, *as such.* No citizen of North Carolina, *as such,* ever paid a dollar of taxes to the United States. Its taxes are laid upon citizens of the United States by a uniform rule all over the nation. If it oppresses any one, it is not a citizen of any State *as such,* but its own citizen. What then has North Carolina to do with it?—can it be supposed that when the United States lays a tax upon its citizens uniform over the whole nation, and sends out its officers to collect it, its officers are subject to arrest and trial in each of thirty-eight States of the Union, with as many different views and constructions? If so, then the collection of the United States taxes is at the mercy of the States; and as taxes are necessary to the existence of every government, the very existence of the United States would be at the mercy of the States, or of any one of them.

It is claimed for the State that she must try every offence against her "peace and dignity," and that an assault and battery and a trespass upon property are such offences. This as a general proposition is undoubtedly true. But suppose a United States Revenue Officer arrests a delinquent United States tax payer, or seizes his property, and a question arises as to whether the arrest or seizure was regular,—is that a matter for the State or is it for the United States to try? It is claimed for the State that she must try the officer in the State Superior Court and then there may be an appeal to the

State Supreme. Court, and then it may be removed to the
United States Supreme Court. Now upon the supposition
that it was a matter of State sovereignty, how is it preserved
by allowing the United States to take it out of its hands at
all? Is it a luxury which a sovereign State should covet, to
try and convict a man whom she cannot punish? It is an
insult to her·dignity, they say, to refuse to let her try and
convict, but it is quite a compliment not to let her punish!

It is true that if the State does try and convict, the officer
may be protected in the manner above stated, by removing
the case to the United States Supreme Court by writ of
error, but it is vexatious and dilatory to the officer, and de-
structive of the United States service; for although another
and another officer might be appointed in the place of the
one arrested, yet they all might be arrested in like man-
ner.

To prevent these evils, an Act of Congress has been passed
to remove the case from the State to the Federal Court
*before trial;* and it is this Act which is resisted. Admitting
that the case may be moved *after* trial, they deny that it
can be removed *before* trial. Now in the discussion in the
United States Senate upon the passage of the removal Act
of 1833, it was·said that while it might be supposed to be
some reflection upon the State Courts to allow them to try
the case and convict, and then remove it from them. yet
there could be no such supposition where the removal was
*before* trial. But now conceding the propriety of removal
*after* trial, the sensitiveness is about the removal *before* trial.
The truth is that there ought to be no sensitiveness about
either. It ought to be a matter of satisfaction that the
United States is ready at any time, and especially at
the earliest time, to take judicial control of its officers
for trial, and for protection of its citizens and tax payers;
for just as two neigbors, although they may . be the
best friends, or even brothers, cannot live in peace if

either will punish the children or servants of the other, so two sovereigns cannot preserve friendly relations, or even their own existence, if either seeks to control and punish the servants of the other.  Hence, "the moment a public minister, or agent, enters the territory of the State to which he is sent, during the time of his residence and until he leaves the country, he is entitled to an entire exemption from the local jurisdiction, civil and criminal." Wheaton's International Law, 224, 209, n.  In all cases of offences committed by public ministers affecting the existence and safety of the State where they reside, if the danger is urgent their persons and papers may be seized, and they may be sent out of the country.  In all other cases it appears to be the established usage of nations to request their recall by their own sovereign, which, if unreasonably refused by him would unquestionably authorize the offended State to send away the offender," *Ibid*, 225.

These are the views which have occurred to us without reference to the decisions of other tribunals.  And now in deference to the importance of the subject and the ability with which it has been discussed, and in respect to other tribunals and in justice to ourselves, we will consider the matter in the light of the decisions of other Courts.

The Act of Congress having in express terms authorized the defendant to apply for the removal of the case from the State to the Federal Court, and the Federal Court having ordered the removal, and the State Court having obeyed the order, the question is ;—Is the Act of Congress constitutional ?

We have already stated what has been the legislation upon the subject of the removal of cases from the State to the Federal Courts, from the passage of the Federal Judiciary Act in 1789, down to the Act now under consideration—1866.  We will now notice a few of the more celebrated decisions under them.

In 1816, in *Martin* v. *Hunter*, in the Supreme Court of the United States, 1 Wheaton, 335; and in 1821, in *Cohens* v. *Virginia*, 6 Wheaton, 264, in the same Court, the whole matter was most elaborately discussed by the ablest counsel, and exhaustive opinions delivered by the Court; in the first case, by Justice STORY, and in the second, by Chief Justice MARSHALL. And the questions were subsequently fully treated of in the light of those decisions by Justice STORY in his work upon the Constitution. 3 Story, § 1695, *et seq.* It would be superfluous to say that every question then involved was settled for all time.

In the first named case the precise point was, whether a *civil* suit which involved "a federal ingredient," could be removed from a State to a Federal Court?—and it was decided that the removal could be made.

In the second case the precise point was, whether a *criminal* prosecution, involving "a federal ingredient," and where a State was a party, could be removed from a State to a Federal Court?—and it was decided that the removal could be made.

Why, then, do not those cases settle this case, which is the removal of a criminal action from the State to the Federal Court?—It is objected that it does not for the reason that those cases were *tried* in the State Courts, and judgments rendered by the State Courts, and were then removed to the Federal Supreme Court for revision; whereas this is an attempt to remove the case from an inferior State Court to an inferior United States Court, for which it is said for the State that there is no authority in the United States Constitution or laws. Let us examine that position, and in doing so we prefer to rely upon what has been said by those luminaries of the law, STORY and MARSHALL, rather than upon any line of argument of our own.

It may be stated as a fact, not disputed by any, that the Federal Judiciary has in one form or another supreme juris-

diction over every conceivable case which can arise which has in it a federal ingredient, as it is admitted this case has. The Supreme Court of the United States has original jurisdiction—that is, suits may be commenced in that Court in two cases; (1.) where ambassadors, &c., are concerned, and (2) where a State shall be party. In all other cases the Supreme Court shall have appellate jurisdiction, with such exceptions and under such regulations as the Congress shall make. Art. III. § 2. It follows, that if the United States Judiciary has jurisdiction of all cases with a federal ingredient, and the United States Supreme Court has original jurisdiction in only two cases, then the Inferior United States Courts must have original jurisdiction in all other cases except the two, as they also have in those two under certain circumstances. But it does not follow that because the United States Inferior Courts have original jurisdiction in all cases except the two, that they may not have also appellate jurisdiction from one to another, and from a State Court. It is said expressly by Justice STORY and by the Federalist, contemporary with the adoption of the United States Constitution, that Inferior Courts may have such jurisdiction.

Justice STORY says: "But although the Supreme Court cannot exercise original jurisdiction in any cases except those specially enumerated, it is certainly competent for Congress to vest in any Inferior Courts of the United States, original jurisdiction of all other cases not thus specially assigned to the Supreme Court; for there is nothing in the Constitution which excludes such Inferior Courts from the exercise of such original jurisdiction. Original jurisdiction so far as the Constitution gives a rule, is co-extensive with the judicial power; and except so far as the Constitution has made any distribution of it among the Courts of the United States, it remains to be exercised in an original or appellate form, or both, as Congress may in their wisdom deem fit. Now the

Constitution has made no distribution except of the original and appellate jurisdiction of the Supreme Court. It has no where insinuated that the inferior tribunals shall have no original jurisdiction. It has no where affirmed that they shall have appellate jurisdiction. Both are left unrestricted and undefined. Of course, as the judicial power is to be vested in the Supreme and Inferior Courts of the Union, both are under the entire control and regulation of Congresss." Story Con. L., § 1698, citing *Martin* v. *Luther*; *Osborne* v. *The Bank*, and *Cohens* v. *Virginia*.

And again he says; "There is no doubt that Congress may create a succession of inferior tribunals, in each of which it may vest appellate as well as original jurisdiction, § 1701. The Federalist, No. 82, is put as a note to that section as follows:

"The Federalist, N. 82, has spoken of the right of Congress to vest appellate jurisdiction in the Inferior Courts of the United States from State Courts (for it had before expressly affirmed that of the Supreme Court in such cases) in the following terms; But could an appeal be made to lie from the State Courts to the subordinate federal jurisdictions? This is another of the questions which have been raised and of greater difficulty than the former. The following considerations countenance the affirmative and then after enumerating the considerations proceeds, * * * Whether their authority shall be original or appellate or both is not declared. All this seems to be left to the discretion of the Legislature. And this being the case I see no impediment to the establishment of an appeal from the State Courts to the subordinate national tribunals; and many advantages attending the power of doing it may be imagined. It would diminish the motives to the multiplication of Federal Courts, and would admit of arrangements calculated to contract the appellate jurisdiction of the Supreme Court. The State tribunals may then be left with a more entire charge of federal

causes, and appeals in most cases in which they may be deemed proper, instead of being carried to the Supreme Court, may be made to lie from the State Courts to District Courts of the Union."

In *Cohens* v. *Virginia*, Chief Justice MARSHALL says: "There can be no doubt that Congress may create a succession of Inferior Courts in each of which it may vest appellate as well as original jurisdiction."

Again he says: "If then the right of removal be included in the appellate jurisdiction, it is only because it is one mode of exercising that power; and as Congress is not limited by the Constitution to any particular mode or time of exercising it, it may authorize a removal either before or after judgment. The time, the process, and the manner, must be subject to its absolute legislative control * * * . And if the right of removal from State Courts exists before judgment because it is included in the appellate power, it must for the same reason exist after judgment. And if the appellate power by the Constitution does not include cases pending in State Courts, the right of removal, which is but a mode of exercising the power, cannot be applied to them. Precisely the same objections therefore exist as to the right of removal before judgment, as after, and both must stand or fall together."

And again he says: "The remedy, too, of the removal of suits would be utterly inadequate to the purposes of the Constitution if it acted only on the parties, and not on the State Courts. In respect to criminal prosecutions the difficulty seems admitted to be insurmountable; and in many civil suits there would in many cases be rights without corresponding remedies. If State Courts should deny the constitutionality of the authority to remove suits from their cognizance, in what manner could they be compelled to relinquish the jurisdiction? In respect to criminal cases there

would at once be an end of all control, and the State decisions would be paramount to the Constitution."

The expression above that "·in respect to criminal prosecutions it seems to be admitted to be insurmountable," has had a strange construction in the argument in this case. It is construed to mean that there is an insurmountable difficulty *against* their removal. Whereas it means precisely the contrary. It means that if they cannot be removed, the difficulties would be insurmountable, because it would make the State Courts superior to the Constitution of the United States. And Chief Justice MARSHALL says, " the public mischiefs which would attend such a state of things would be truly deplorable."

We will refer now to a late case in the Supreme Court of the United States ;—*The Mayor* v. *Cooper*, 6 Wallace, 247. It was a civil suit commenced in the State Court for trespass on property. The defendants' defence was that they were acting under orders of the President of the United States, and under the Acts of Congress of 1863, '66,—same as in this case. They filed their petition in the Federal Circuit Court for the removal of the case from the State to the Federal Court. The State Court sent the case to the Federal Court, and the Federal Court dismissed the case and sent it back to the State Court for trial ;—holding, that the Acts of Congress were void, and from that ruling the case went up to the Supreme Court of the United States. We call attention to the fact, that here was a case which went from a subordinate State Court to a subordinate Federal Court, and thence to the Supreme Court of the United States, without having gone to the State Supreme Court at all.

The opinion of the United States Supreme Court in that case, speaking of the jurisdiction of the Courts, says ; "Jurisdiction, original or appellate, alike comprehensive in either case, may be given. The constitutional boundary line of both is the same. Every variety and form of appellate juris-

diction within the sphere of the power, extending as well to the Courts of the States as to those of the nation, is permitted. There is no distinction in this respect between civil and criminal cases. Both are within its scope. * * * * It is the right and the duty of the national government to have its Constitution and laws interpreted and applied by by its own judicial tribunals, * * * . This is essential to the peace of the nation and to the vigor and efficiency of the government. A different principle would lead to the most mischievous consequences. The Courts of the several States might determine the same question in different ways. There would be no uniformity of decision. For every act of an officer, civil or military, of the United States, including alike the highest and the lowest done under his authority, he would be liable to harassing litigation in the States Courts. However regular his conduct, neither the laws nor the Constitution of the United States could avail him, if the views of those tribunals and of the juries which sit in them should be adverse. The authority which he had served and obeyed would be impotent to protect him. Such a government would be one of pitiable weakness and would wholly fail to meet the ends which the framers of the Constitution had in view. They designed to make a government not only independent and self-sustained, but supreme in every function within the scope of its authority. The judgments of this Court have uniformily held that it is so, * * * * . We entertain no doubt of the constitutionality of the jurisdiction given by the Acts under which this case has arisen."

These authorities are too plain to be misunderstood, and of too high authority to be disregarded.

But we repeat and desire it to be distinctly understood, that neither these authorities nor anything that we have said go to the extent of saying, that the United States Courts have any power to try offences "against the peace and dig-

nity of the State," or to control the State Courts therein. But were a United States officer is charged with a duty and does acts under color of his duty which but for his office would be a crime against the State, then, and in that case the United States Courts have jurisdiction, and under the Act of Congress, can remove the case from the State Courts into the Federal Courts. This power is indispensable to the United States and is in no way derogatory to the State.

How the Federal Courts will dispose of the case, and of the officer, is for them to determine. All that the State has to do is to send the case when demanded to the Federal Court. As has been already said, the defendant is an officer of the United States; the tax-payers whom he has offended are citizens of the United States; the United States is able and we are to suppose willing to protect its citizens from the oppression of its officer, if he has oppressed them; and to protect its officer, if they have resisted him. Just as North Carolina is bound to protect its citizens in "life, liberty and property," so the United States is bound to protect its citizens in "life, liberty and property." When the United States is dealing with its citizens, collecting its taxes for instance, the State must stand off; and when the State is dealing with its citizens, the United States must stand off.

Nor is it to be understood from anything that we have said, that when a man commits a crime against the laws of the State *in his individual capacity*, whether the crime is small or great, that he can defend himself by the fact that he is a United States officer. Not at all. He is just as guilty, and may be convicted—hung it may be—just as if he was not an officer. It is only where the act complained of is an official, act or done by virtue or under color of his office, that he is entitled to have his case passed upon by the power which appointed him. To his own master he must stand or fall;—for illustration, if the defendant arrested a man, that is a crime against the State for which the State

Court may try him; but if he says, true I arrested him, but I as a United States officer arrested him as a delinquent tax payer, then that which *seemed* at first to be a crime against the State *seems* now to be official duty to the United States; and whether it is or not, the United States has the right to determine.

It would seem that the proper way to have disposed of this case, was, that which was pursued in the case already cited ;— *The Mayor* v. *Cooper.* In that case as in this, the State Court sent the case to the subordinate Federal Court, and the plaintiff followed the case into the Federal Court and moved to dismiss it, and send it back to the State Court for trial, which the Federal Court did, and then the defendant appealed to the Supreme Court of the United States by writ of error. So here, when Judge Cox ordered the case to be sent to the Federal Court, the State ought to have followed the case to the Circuit Federal Court, and moved to dismiss it upon the ground that the Act complained of was done by the defendant, not as an *officer* but as a *man,* and then the Federal Court could have determined that matter ; and if it had been satisfied that the defendant was not acting as an officer, or if he was, that he was misbehaving, then the case could have been returned to the State Court for trial; but if satisfied that the defendant was only doing his duty as an officer, then he could have been discharged, and from the judgment of the Circuit Court either party could have carried it to the Supreme Court of the United States.

But to this it is objected that the Circuit Federal Court has no power to do any thing with it, if it were sent to it, and therefore why send it? That is a mistake. If that were so, what would have been the action of the Supreme Court of the United States in the case last cited ?— *The Mayor* .v. *Cooper.* It would have sustained the action of the Court below in dismissing the case for want of jurisdiction, but instead of that, it reversed the action of the Court below,

and said, "an order will issue that the cause be *re-instated,* and that the Court below proceed in it according to law "

Why "re-instate" it if it ought not to have been there? Why "proceed in it according to law," if it could not proceed at all?

The question as to *how* the Circuit Federal Court will proceed, or what it should do, is not before us. If there is any defect in the machinery, Congress can supply it. Nor is there any difference between criminal and civil cases so far as the power of removal is concerned, as we have already shown. The points intended to be decided are; (1) that the Act of Congress under which the removal was ordered, is constitutional; and (2) that the ruling of Judge Cox was proper.

RODMAN, J. *Dissenting.* I am unable to concur in the opinion of my Associates, and it is respectful to them to state my reasons.

The question has been learnedly and ably discussed at the bar here and elsewhere, and probably every argument has been exhausted which can properly bear upon it.

We have been informed also, that it is the intention of the parties, whatever our decision may be, to obtain the decision of the Court having final jurisdiction of all questions arising out of the Constitution of the United States. We hope that course will be taken. The importance of the question requires it. All the reasons that exist on either side will be presented to that Court, and whatever its decision may be, it will be acquiesced in and cheerfully followed by this Court, and I have no doubt by every department of the government, as well as by the people of North Carolina.

For these reasons, I shall be as brief as possible, stating merely the principles upon which I think the case ought to be decided, without uselessly consuming space, by attempting to support them by a full exposition of the argument, or

by a citation of authorities. For those I refer to the dis-
cussions I have alluded to.

No doubt the Act of Congress of 1866, intended to em-
brace criminal prosecutions for offences against the State,
such as that for which the present defendant is indicted. If
the Act is constitutional, they must be removed to the Cir-
cuit Court, whatever may be done with them there. That
Congress has not provided for the trial of such cases after
their removal, is not an argument that it did not intend a
removal, which can weigh against the plain language of the
Act. It would prove that the Act was defective. But this
would not justify a State Court in refusing to obey it.

The only question is, had Congress the constitutional
power to pass the Act? I think it had not.

It is conceded, I think, and I will assume it, that the
Circuit Courts of the United States have no original juris-
diction of an indictment for a crime which is such merely
by the common law, and has never been made a crime by
any Act of Congress. The indictment in this case, which
is for an assault and battery by one citizen of North Caro-
lina upon another citizen of the State within a County of
the State, could not have been found in the Circuit Court.

A jurisdiction acquired by the removal of an action from
a State Court, I think, is original jurisdiction, according to
the legal as well as the ordinary meaning of the term.

Before there can be an appeal, some decision of fact, or
law, or of both, must have been made, which it is the object
of the appeal to reverse. In the present case there has been
no decision, (except an interlocutory one) and there can be
no appeal except in some new and forced sense of the word.

It is an established rule that technical terms must be in-
terpreted in the sense which they bear by the usage of the
profession. If we abandon this rule, then we may give them
any meaning that we please, and for any reason, or by
caprice.

When Judge MARSHALL classed the jurisdiction acquired by removal, as appellate, he did so merely *arguendo.* The classification formed no part of the decision, and its accuracy in this respect, was not necessary to support it. Whatever so great a Judge says, even if it be without much consideration, deserves respect; but it is not authority, in the proper sense of that term, to which the Courts must submit their reason.

The United States and the several States may be regarded as in some respects, foreign to, and independent of each other. Each has its sphere of action in which it is sovereign. The Constitution, in giving powers to the Federal Courts, gave or authorized Congress to give to them all such jurisdiction as was necessary to preserve the independence and sovereignty of the United States in all cases within the sphere of its duties, but it left to the State Courts the jurisdiction to administer the domestic laws of the State among its own citizens. Of a crime against the United States, the Federal Courts alone have jurisdiction. Of a crime against the State, the Courts of the State alone have original jurisdiction, and if in the course of the trial, some federal element appears, the case may be decided on appeal by the Supreme Court of the United States, in order that the sovereignty of the United States may be guarded, and an uniform construction given to its laws. It would break in upon this harmonious arrangement of powers, whereby no clashing can ever occur, if it were held that the State Courts could not try breaches of the peace within the borders of the State between its own citizens whenever the party accused was an officer in the revenue service of the United States and claimed that the act had been done in the discharge of his official duty. If such be the law, the States have lost the last remnant of sovereignty. They cannot preserve order within their territories. A class is created that defies their laws, is independent of their jurisdiction, and

relies for immunity upon a government which has no duty, and no interest to preserve the peace of the State, and in my opinion, no power under the Constitution to do so through the original jurisdiction of its Courts, or except in cases of which this is confessedly not one.

The Circuit Courts can have no jurisdiction in a case which they cannot determine. They cannot try the accused in this case because he is not charged with any offence against the Government whose laws *only* they administer. They cannot punish if they should convict him, because Congress has prescribed no punishment, and the Court can inflict none at common law. Nor can any Act of Congress remedy these defects of power. If Congress could, and should, make every crime at common law a crime against the United States, still they would remain crimes against the States which the State Courts could try and punish. The States must have jurisdiction to try offences against their laws, or they cease to be States. It is a power necessarily inherent in a State. It alone makes a State.

It is said that the Federal Courts must have the sole power of trying its revenue officers for assaults and other offences committed by them by color of their office and of determining their criminality, as otherwise, it could not collect its internal revenue. The jurisdiction of the Federal Courts in such cases is thus argued to be a necessary and proper incident to the power to collect taxes. If it were true that the United States could not collect internal taxes without this jurisdiction in the Federal Courts, it would follow that Congress could constitutionally give it, for the power of Congress to lay and collect taxes is undoubted. These apprehensions spring from an excessive sensibility. I believe they are groundless. I think that the United States with its unlimited irregular army of revenue collectors, detectives and marshals, with all their assistants and deputies backed in case of need by the regular army, *can* collect its taxes, and

*still* leave to the State Courts, the jurisdiction to try one of these officers for a crime against a State committed within the borders of the State, and which is a crime against no other sovereignty but that of the State. The State of North Carolina collects its revenues, which are all from direct taxation by ninety-four Sheriffs, without violence, without oppression, and without complaint.

If the officer acted in what he did within the scope of his duty, it would be a defence in the State Court; and if it be possible that juries might from prejudice sometimes fail to give due weight to the evidence in his behalf, the Judges of the State, whom we must assume to be equal in integrity and impartiality to the Federal Judges, may certainly be trusted to set aside all convictions against the weight of evidence; and if we may suppose it possible, that any Judge should so fail in his duty from prejudice or partiality, this Court would probably have the power, and certainly the inclination, to give relief. 11 Bush, (Ky.) 495. If the highest State Court when the case is brought before it shall err in any matter of law, it is admitted that the error could be corrected on appeal to the Supreme Court of the United States.

On the other hand, if the power of withdrawing an indictment against a revenue officer from the State Courts shall be sustained, immunity will practically be secured for all these officers, for all offences. Conceding as I do, that the Judges and officers of the Circuit Court may be expected to discharge their duties with fidelity, yet when an offence committed in a distant part of the State, is removed for trial to Raleigh or Greensboro, in the great majority of cases the prosecutor and the witnesses will be unable to attend, and a verdict of acquittal will be the necessary result. The injured persons would brood over their supposed or real injuries, and a spirit of dissatisfaction with the government would grow up by no means conducive to the public good.

The insurrection of Wat Tyler was caused by the crime of an internal revenue officer committed under color of his office. To deprive the State Courts of the power of punishing such offences, would result in breeding a band of marauders under color of law, forming a class with peculiar and odious privileges whose existence would be as incompatible with the honor and welfare of the United States, as with the dignity of the States, and their power to preserve peace and order within their limits. These considerations far outweigh any increased facilities in the collection of taxes, which might be gained by depriving the States of this jurisdiction.

Fortunately this question is of an interest and importance not confined to any section. Taxes are collected in all the States, and it may be supposed that the manners and methods of proceeding of the inferior officers of internal revenue are of the same polite and agreeable character all over the world. The same questions must arise, sooner or later, in every State, and every State has the same interest in the decision of this case that North Carolina has. In my opinion the order of the Superior Court for the removal of this action to the Circuit Court of the United States should be reversed, and the Superior Court directed to try the prisoner.

PER CURIAM.                    Judgment affirmed.