## STATE *v.* SULLIVAN *et al.*

*(Circuit Court, W. D. North Carolina.* April 20, 1892.)

**1. REMOVAL OF CAUSES—PROSECUTION OF REVENUE OFFICER—DEPUTY CLERK—REV. ST. § 643.**

The removal of a prosecution against a United States revenue officer from a state to a federal court is effected, and complete jurisdiction acquired, immediately upon the filing of a proper petition therefor in the clerk's office of the federal court; and the subsequent issuance of a writ of *certiorari* or *habeas corpus cum causa* is but the use of auxiliary process, and the performance of a ministerial duty. When, therefore, such petition is filed during vacation, and in the absence of the clerk, the proper writ may be issued by his deputy, and it need not show upon its face that the clerk has held the petition to be sufficient.

**2. SAME—CERTIORARI TO STATE COURT.**

The statute provides in such case that when suit is commenced in the state court by summons or other process, except *capias,* the clerk shall issue a writ of *certiorari,* but that when it is commenced by *capias,* or any other similar form of proceeding, "by which an arrest is ordered," the clerk shall issue a writ of *habeas corpus cum causa.* *Held,* that the statute must be liberally construed as part of the revenue system, and that a writ of *certiorari* was therefore properly issued when the officer had been released on bail, and had made no application for the writ of *habeas corpus cum causa.*

**3. SAME.**

In such case a writ of *certiorari* addressed to the marshal of the district, instead of to the state court, commanding the marshal to make known to the clerk of the state court the removal of the cause, and that such court is required to send a transcript of the record to the circuit court, is a sufficient compliance with the statute.

**4. SAME—WAIVER—DEFENSE IN STATE COURT.**

Where a state court proceeds with a prosecution against a United States marshal after he has effected a removal to a federal court, he does not lose his right of trial in the latter court by defending in the former.

At Law. A motion to proceed with the trial of this case, removed from the state court, the state court having declined to recognize the right of removal, and tried the case.

*Benjamin F. Long,* for plaintiff.

*R. Z. Linney* and *M. S. Mott,* for defendants.

DICK, District Judge. Many state and federal courts of the highest authority have heard argument and carefully considered questions of law arising under section 643 of the Revised Statutes of the United States,[1]

[1]Rev. St. § 643: "When any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under or acting by authority of any revenue law of the United States, now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, or is commenced against any person holding property or estate by title derived from any such officer, and affects the validity of any such revenue law, or is commenced against any officer of the United States, or other person, on account of any act done under the provisions of title 26, 'the elective franchise,' or on account of any right, title, or authority claimed by such officer or other person under any of the said provisions, the said suit or prosecution may, at any time before the trial or final hearing thereof, be removed for trial into the circuit court next to be holden in the district where the same is pending, upon the petition of such defendant to said circuit court, and in the following manner: Said petition shall set forth the nature of the suit or prosecution, and be verified by affidavit; and, together with a certificate signed by an attorney or counselor at law of some court of record of the state where such suit or prosecution is commenced, or of the United States, stating that, as counsel for the petitioner, he has examined the proceedings against him, and carefully

and in able, elaborate, and positive decisions declared its constitutionality, and forcibly announced the wise and just principles of public policy upon which it is founded. They have also clearly defined the extent of its operation, and the methods of procedure for the application of its provisions in the administration of justice. This statute is highly remedial, and I am of opinion that it should receive a liberal construction in all courts, as experience has shown that it is essential to the effectual enforcement of the internal revenue laws of the federal government, which is the common government of the people of all the states of the Union. This statute is not a usurpation of authority in disregard of the rights of the states. It certainly cannot be considered as unjust and unreasonable for the federal government to assert the constitutional and essential right to investigate in its own courts the alleged wrongful conduct of its own officers when acting under color of its authority, and in obedience to its mandates. Such a right is inherent and inseparable from the nature of our general government, and the exercise of such power is an imperative duty, the performance of which is indispensable to its existence, and the proper and efficient discharge of the important functions with which it is invested by its constitution and laws. These fundamental principles have been so often, ably, and fully considered and determined in judicial opinions that I deem further discussion unnecessary in this case. In the case of *State* v. *Hoskins*, 77 N. C. 530, the construction of this statute was involved, and READE, J., in delivering the opinion of the court, clearly and forcibly states principles of law that have been approved by many subsequent decisions of other courts:

"Where a United States officer is charged with a duty, and does acts, under color of his duty, which but for his office would be a crime against the

inquired into all the matters set forth in the petition, and that he believes them to be true, shall be presented to the said circuit court, if in session, or, if it be not, to the clerk thereof at his office, and shall be filed in said office. The cause shall thereupon be entered on the docket of the circuit court, and shall proceed as a cause originally commenced in that court; but all bail and other security given upon such suit or prosecution shall continue in like force and effect as if the same had proceeded to final judgment and execution in the state court. When the suit is commenced in the state court by summons, subpœna, petition, or another process except *capias*, the clerk of the circuit court shall issue a writ of *certiorari* to the state court, requiring it to send to the circuit court the record and proceedings in the cause. When it is commenced by *capias*, or by any other similar form of proceeding by which a personal arrest is ordered, he shall issue a writ of *habeas corpus cum causa*, a duplicate of which shall be delivered to the clerk of the state court, or left at his office, by the marshal of the district, or his deputy, or by some person duly authorized thereto; and thereupon it shall be the duty of the state court to stay all further proceedings in the cause, and the suit or prosecution, upon delivery of such process or leaving the same as aforesaid, shall be held to be removed to the circuit court, and any further proceedings, trial, or judgment therein in the state court shall be void. And, if the defendant in the suit or prosecution be in actual custody or mesne process therein, it shall be the duty of the marshal, by virtue of the writ of *habeas corpus cum causa*, to take the body of the defendant into his custody, to be dealt with in the cause according to law and the order of the circuit court, or, in vacation, of any judge thereof; and if, upon the removal of such suit or prosecution, it is made to appear to the circuit court that no copy of the record and proceedings therein in the state court can be obtained, the circuit court may allow and require the plaintiff to proceed *de novo*, and to file a declaration of his cause of action, and the parties may thereupon proceed as in actions originally brought in said circuit court. On failure of the plaintiff so to proceed, judgment of *non prosequitur* may be rendered against him, with costs for the defendant."

state, then and in that case the United States courts have jurisdiction, and under the act of congress can remove the case from the state courts into the federal courts. This power is indispensable to the United States, and is in no way derogatory to the state."

In the case of *Ableman* v. *Booth*, 21 How. 506, the supreme court defines with great clearness and force the constitutional relations existing between the courts of the states, the people of the states, and the federal government. The faithful observance of the duties of such relations is essential to the peace, harmony, and prosperity of the national Union.

Upon careful examination of the proceedings instituted for the removal of this case from the state court to this court for trial, I find that they are in substantial conformity to the act of congress. The petition of the defendants represented that they were officers and agents of the government, duly appointed and acting under the revenue laws of the United States, and that the acts for doing which they are criminally prosecuted in the state court were acts done under color of their office and employment, and in the performance of their official duties, in the enforcement of said revenue laws. The representations set forth in their petition, showing the nature of the prosecution and the authority and circumstances under which they acted, were duly verified by oath, and by the certificate required by law to be given by the legal counsel of the petitioners. As the circuit court was not in regular session, the petition was presented to the deputy clerk of such court at his office in Statesville, and was duly filed in said office, and the case was thereupon entered on the docket of the circuit court, to be proceeded with as a case originally commenced in said court, and a writ of *certiorari* was duly signed and issued by a regularly appointed and qualified deputy clerk, acting in the name of the clerk of the court. This writ was placed in the hands of the marshal of this district, and a duplicate copy was delivered by him to the clerk of the state court before the commencement of the trial of the case in said court. As the defendants were on bail, and not in actual custody, a writ of *habeas corpus cum causa* was not applied for in the petition, and was not issued by the deputy clerk. The recognizance in the state court was transferred by operation of law in the removal of the case, and the defendants were under obligation to appear in this court and answer the charges in the indictment found by the grand jury of the state court.

I entertain the opinion that when proceedings for the removal of a criminal prosecution from a state court to a federal court for trial are in conformity to the act of congress providing for such removal, the representations averred in the petition of defendants, constituting sufficient grounds for removal, verified by oath and by certificate of counsel, must be accepted as true, and the case is *ipso facto* removed to the circuit court, and the jurisdiction of the state court is at an end, unless the case shall be remanded thereto. Spear, Fed. Jud. 484. The rights of the defendants and the jurisdiction of the circuit court depend upon the authority of law, and not upon the correct performance of a ministerial duty by the clerk

of the court. The act of congress does not invest the clerk with any judicial function or discretion, but commands him to issue the prescribed auxiliary remedial process to prepare the case for trial. No duly authenticated record of the state court has been returned by the clerk, in obedience to the writ of *certiorari*, but I am informed that no objection was made in the state court as to the regularity and sufficiency of the proceedings for removal up to the time of filing the petition in the office of the clerk of this court, and the entering of the cause upon the docket. The refusal of the court to recognize the right of removal was founded upon the fact that the writ of *certiorari* was not personally issued by the clerk; and the court was of opinion that such writ, signed and issued by the deputy clerk in the name of the clerk, was irregular, erroneous, and void. The act of congress, in express terms, prescribes the nature of the representations that must appear in the petition, the method of verification, and the manner of filing the same. When these requisites are complied with, the proceeding at once has the operative force and effect of removing the case, as the statute positively declares that "the cause shall thereupon be entered on the docket of the circuit court, and shall proceed as a cause originally commenced in that court." This clause, so clear and imperative in its terms, must, under a reasonable construction, have the force and effect of conferring paramount jurisdiction on the circuit court, and full power to proceed, at once, to have the cause prepared for trial. This jurisdiction is as complete and plenary as if the cause had been originally commenced in the court. As this court had rightfully acquired jurisdiction under a paramount constitutional law of the United States, the state court was divested of its former jurisdiction, and could not legally proceed to try the cause. The writ of *certiorari* mentioned in section 643 is an auxiliary writ of the court, issued by its ministerial officer, the clerk, or the regularly appointed and qualified deputy clerk, in order that the removed cause may be tried as fairly and speedily as possible. The purpose of issuing such writ is to procure the record of the state court, so that the circuit court may proceed with the case where the jurisdiction of the state court ceased. This writ was also intended to give the state court notice of the removal of the cause, so that it might have an opportunity of complying with a duty expressly imposed by a paramount law of the federal government. The subsequent clause in the statute, declaring that "the suit or prosecution, upon the delivery of such process, or leaving the same as aforesaid, shall be held to be removed to the circuit court, and any further proceedings, trial, or judgment therein in the state court shall be void," was intended as a positive inhibition of any further proceeding in the state court, and to authorize the circuit court to proceed in the manner provided. Conceding for a moment that the objection to the ministerial process of this court has some legal foundation, it is merely technical, and does not affect the merits of the case. As the process issued from a court having rightful and competent jurisdiction of the case, it was not void, and could only be irregular or erroneous. Even if it was irregular or erroneous, it gave full

and explicit notice of the assumed jurisdiction of the court, and of the rights claimed by the defendants under the constitution and laws of the United States, as well defined and established by decisions of our state supreme court and the supreme court of the United States. *State* v. *Hoskins,* 77 N. C. 530; *Tennessee* v. *Davis,* 100 U. S. 257; *Davis* v. *South Carolina,* 107 U. S. 597, 2 Sup. Ct. Rep. 636. Under such circumstances it seems to me that the state court could, as a matter of comity and common justice, have given the defendants a reasonable opportunity of having a mere irregularity of proceeding corrected, and thus administer substantial justice, and avoid any occasion for conflict of jurisdiction between a state and federal court exercising jurisdiction in the same territorial limits. Judicial controversies are always unpleasant and unseemly, and should be avoided, unless such conflicts are necessary to a proper enforcement of the law,—to secure the legal rights of citizens, the right of the government, and the impartial administration of justice. The defendants, by making the best defense they could in the state court, neither lost nor impaired in the least degree their right of trial in this court, which was claimed by them in the manner provided by law. *Steamship Co.* v. *Tugman,* 106 U. S. 118, 1 Sup. Ct. Rep. 58.

I will now proceed to consider more particularly the nature of the writ of *certiorari,* issued by the deputy clerk of this court in the name of the clerk, to ascertain whether the action of the deputy was in accordance with official duty and power. At common law the writ of *certiorari* is used for two purposes: (1) As an appellate proceeding for the re-examination of some action of an inferior tribunal; and (2) as auxiliary process to enable a court to obtain further information upon some matter already before it for adjudication. *U. S.* v. *Young,* 94 U. S. 258. It was for this last purpose that the writ was issued in this case. In its relations to this court the state court is in no sense of the word an inferior court. The proceedings in this case are not appellate in their nature. They were instituted under a positive and constitutional law, which entitled the defendants, upon making a certain representation of facts, in a properly verified petition, to have a case untried and pending in a state court having jurisdiction removed for trial to a federal court which had, in accordance with law, acquired, not concurrent, but paramount, jurisdiction. A court must have competent jurisdiction of a matter before it can award a writ of *certiorari.* When a valid law confers upon a court jurisdiction to issue a writ of *certiorari,* such jurisdiction must necessarily be superior to the jurisdiction to which the writ is directed; for such writ commands the performance of a duty. Such superior jurisdiction is derived from positive law, and is in no way dependent upon the formal correctness of the writ which the court issues in order that it may exercise its vested jurisdiction with intelligence and dispatch. When this case was properly entered upon the docket of this court, jurisdiction to issue the writ of *certiorari* and try the case was conferred by the act of congress, and was superior to the jurisdiction of the state court. The writ issued did not enlarge the jurisdiction of the court, but was only auxiliary process,

to obtain the record of the case, and enable this court to exercise jurisdiction speedily and justly. Conceding for a moment that congress has the power to confer judicial functions upon a clerk of a circuit court, no such legislative intention can be inferred from the language of imperative command used in the statute,—the clerk " shall issue a writ of *certiorari* to the state court, requiring it to send to the circuit court the record and proceedings in the cause." If a judge in court had made such an order, a deputy clerk would undoubtedly have acted as a ministerial officer in issuing the writ. The positive order of the law is certainly as mandatory as the order of its judicial officer. This writ is generally awarded as an auxiliary to the exercise of judicial authority, but there is nothing in the constitution that prevents congress from directing the clerk of a court to issue such writ in his ministerial capacity. A return to the writ can properly be made by the clerk of the inferior court under his hand and the seal of the court. If the defendants in this case had been in actual custody, and in their petition had made application for a writ of *habeas corpus cum causa*, there is no reason why the deputy clerk should not have issued the writ. This is not the high prerogative writ of *habeas corpus*, which can only be awarded by judicial authority. All kinds of writs of *habeas corpus* are subject to the control and regulation of congress, acting within the limits imposed by the constitution. Congress has conferred power upon the courts of the United States to issue " writs of *habeas corpus*," and this grant of authority includes every species of the writ. Rev. St. U. S. § 751; *Ex parte Bollman*, 4 Cranch, 75. In section 752, congress has only conferred power upon the judges of said courts, in vacation, to award writs of *habeas corpus* for the purpose of an inquiry into the cause of restraint of liberty,—the high prerogative and judicial writ. In section 643, congress has seen proper to employ the old common-law writ of *habeas corpus cum causa* to be issued by a court in session, or clerk of the court in vacation, in the removal of certain specified cases from state courts to federal courts for trial. This writ had become almost obsolete in England and this country, and we must look to the common law to ascertain its nature and application. This old common-law writ issued out of the courts of Westminster, and afforded a very liberal and expeditious mode of procedure for the removal of causes. It was grantable of common right, at all times, without any motion in court, and it instantly superseded all proceedings in the court below. It was awarded by the law without the leave of the court. *Ex parte Bollman, supra;* 3 Bl. Comm. 130; Tidd, Pr. 297. Upon a fair and reasonable construction of section 643, it is evident that congress well knew the nature of the common-law writs mentioned, and intended them to be employed by the circuit courts as auxiliary and expeditious remedial process in the removal of causes, and in aid of jurisdiction already acquired by the filing of a petition in conformity with the requirements of the statute. To this end the law positively directs and commands the clerks of such courts to issue such remedial process when the courts are not in session.

Congress has no authority to confer judicial power upon clerks of courts; for under the provisions of the constitution the judicial power of the United States can only be vested in and be exercised by courts created and established by law to expound and administer the law in application to the cases and controversies which may come before them in due course of legal procedure. Const. U. S. art. 3, § 1. Congress may by law impose duties upon executive and ministerial officers of the government, which require them to consider and determine questions of law and of fact, but in so doing they do not exercise judicial power. Such duties have been imposed upon judges, to be performed out of the course of the courts; and their decisions, although judicial in nature, are held not to have been made in the exercise of judicial power under the constitution. *Ex parte Vallandigham,* 1 Wall. 253; *Ex parte Zellner,* 9 Wall. 247. We are aided in forming our opinion as to the intention of congress by considering its legislative will and action in other statutes passed for the removal of causes where citizens claim rights under the constitution and laws of the United States. Under the provisions of these statutes, as a general rule, removal proceedings are instituted in the state courts; and if a petition is there filed and verified, setting forth such representations of facts as show that the circuit court can rightfully take jurisdiction, then, upon a sufficient bond being presented, the case is removed by law to the circuit court, notwithstanding an order of the state court refusing to recognize the right of removal. *Marshall* v. *Holmes,* 141 U. S. 589, 12 Sup. Ct. Rep. 62. We cannot believe that congress intended that proceedings for removal under section 643 should be less speedy and peremptory where the rights of the government are involved, in the persons of its officers acting under color of its authority, in enforcing its laws in obedience to its mandates. Congress knew well that clerks of courts could not always be in their offices, and that a deputy clerk usually performed the duties of a clerk in his name. The laws of the United States make provision for the appointment of competent and efficient deputy clerks. They are appointed by the court, and may be removed by the judges. They are qualified by taking the official oath required of all clerks of courts, and may be required to execute an official bond to the United States for the faithful performance of official duties. Rev. St. U. S. §§ 624, 626, 796. They act under official obligation imposed by law. They occupy a higher position than ordinary deputies, who hold their position under the appointment and at the will of their principals in office. At common law a deputy, as an essential incident to his appointment, has full power to do most ministerial acts which his principal is empowered to do. A deputy cannot appoint a deputy, or exercise a judicial function, or perform an act which the law expressly requires to be performed by the principal in person. *Parker* v. *Kett,* 1 Salk. 95; *Miller* v. *Miller,* 89 N. C. 402. The proceedings of a court are made up of judicial and ministerial acts; and it is often difficult to distinguish the judicial from the ministerial in the courts of a state where there is no constitutional

restriction upon the legislature in conferring judicial powers upon subordinate officers, whose duties are usually ministerial. In determining these questions, state courts have adopted the general rules of the common law for their guidance. A judicial act is that which is done by an officer having power to determine a question by his judgment, involving intellect and discretion in a matter of opinion. A ministerial act is that which is lawfully done by an officer under the direction and command of a superior power. The laws of this state have invested the clerks of the superior courts with judicial and ministerial functions, and there have been many cases in the courts where perplexing questions have arisen from the actions of deputies in the performance of official duties. The supreme court of the state, in many well-considered opinions, has been very liberal in defining judicial and ministerial functions, and in sustaining the acts of deputy clerks in issuing process in cases which required the exercise of judgment and discretion, and some other elements of a judicial nature. The doctrine is clearly announced that "the law contemplates that every man shall have the benefit of the principles as well as the procedure of the law, to enable him to vindicate and establish his rights." That court fully recognizes the importance and necessity of having deputy clerks "to help the dispatch of public business, and to provide for the same when the clerk might be necessarily absent from his office, or unable for any cause to give personal attention to his official duties." *Miller* v. *Miller*, 89 N. C. 402, and cases cited; *Evans* v. *Etheridge*, 96 N. C. 42, 1 S. E. Rep. 633; *Butts* v. *Screws*, 95 N. C. 215.

I have been informed that the supreme court of this state has affirmed the judgment of the court below in this case, but I have not seen the opinion filed. I desire to have an opportunity of carefully reading and considering such opinion before I proceed further. I have confidence in the ability, integrity, learning, and patriotism of the justices who preside in that distinguished court; and I have learned that questions of law arising upon the face of the record were discussed and determined, which were not presented on the trial in the court below. It is ordered that this case be continued to the next term, and that the defendants enter into recognizance for their appearance.

The solicitor of the state for this district, being present, waived any further notice of this proceeding of the court.

---

### SUPPLEMENTAL OPINION.

#### (At Chambers. March 14, 1892.)

Since delivering and writing out the foregoing opinion, I have seen the decision of the supreme court of this state, (14 S. E. Rep. 796,) af-

firming the judgment of the court below.[1] I will make no comment on the general tone and spirit of the language of the court, but will only view it as an honest, strong, and decided expression of judicial opinion, manifesting a jealous and watchful care over the jurisdictional rights of state courts. The principal ground of the decision was the question of law discussed and decided in the superior court, as to the right and power of a deputy clerk, in the name of the clerk, to receive and file the

[1] The opinion of the state court, delivered by MERRIMON, C. J., is as follows, omitting the part in which the removal statute is set out: "The purpose of this statutory provision is to create jurisdiction in the circuit court of the United States, and to transfer to that court the jurisdiction of state courts in the classes of cases specified therein, when such cases shall be removed as contemplated by it. It is hence very important, and should be strictly observed in all material respects. Such observance is the more important, as the method of removal prescribed does not require the circuit court to supervise and scrutinize applications for removal unless it shall happen to be in session at the time the same shall be presented. The removal of causes is no doubt subject to abuses, and, as suggested, frequently prostituted with a view to evade and delay rather than obtain justice on the part of the party professing to seek it. This statute has been the subject of much judicial criticism. Its validity as a whole, and that of some of its material parts, have been much questioned. But it is now settled that it is valid and operative. It is therefore the duty of the courts, both state and federal, in good faith to give it effect in all proper cases. Tennessee v. Davis, 100 U. S. 257; Davis v. South Carolina, 107 U. S. 597, 2 Sup. Ct. Rep. 636; State v. Hoskins, 77 N. C. 530. The state court will lose, be deprived of, and relinquish its jurisdiction only in the case and in the way and manner prescribed. Courts do not readily give up or abandon their jurisdiction of cases before them. It is of their nature and purpose to administer justice as contemplated and intended by the laws of their creation and being. It is not to be presumed that they are incapable, unjust, or untrustworthy. On the contrary, the presumption is in their favor in all these respects. Hence, statutes not in aid of, but depriving them of, their jurisdiction, particularly where it has already attached, are to be strictly interpreted. The present case is a criminal prosecution, begun by indictment and a *capias.* whereby 'a personal arrest is ordered.' It intends that the defendants shall be arrested and held in close custody by the sheriff, unless they shall give bail as allowed by law. In such case, if it be granted that the defendants regularly and sufficiently presented their petition for removal of the action to the clerk of the circuit court of the United States at his office, that court not being in session at the time, and that the clerk duly filed it, and entered the cause on the docket of that court, the jurisdiction of the latter was not then complete, nor was that of the state court over and at an end. It then became necessary, in order to completely and efficiently transfer the jurisdiction from the state to the circuit court, for the clerk of the latter court to 'issue a writ of *habeas corpus cum causa,* a duplicate of which should have been delivered to the clerk of the state court, or left at his office, by the marshal, his deputy, or some person duly authorized to do so.' Thereupon it would become the duty of the state court 'to stay all further proceedings in the cause.' This being done, the prosecution would 'be held to be removed to the circuit court, and any further proceedings, trial, or judgment therein in the state court' would be void. The statute above recited so expressly declares and provides. The case is not removed. The state court does not lose its jurisdiction until the writ last mentioned is so delivered to its clerk. The state court cannot know of the intended removal except in the way thus prescribed. The statute on purpose prescribes such method of procedure in case of criminal prosecution; and it in like manner prescribes that 'the clerk of the circuit court shall issue a writ of *certiorari* to the state court' in case of the removal of other causes of other classes, 'requiring it to send to the circuit court the record and proceedings in the cause.' These writs, and the proper service of them, are essential to perfect the jurisdiction of the circuit court, and put an end to that of the state court. The method of removal prescribed so expressly requires, and no other method is prescribed in terms or by implication. Any other method adopted by the courts for the sake of convenience, or to cure irregular or defective procedure, would put a very delicate subject, regulated by statute, at the discretion of the courts, and lead to intolerable confusion. The only just and tolerable course is to observe the statute, at least substantially, in all respects. In the present case the clerk of the circuit court did not issue a writ of *habeas corpus cum causa,* as he should have done. The paper writing he signed by his deputy, and had served on the clerk of the state court, was not such writ in form or substance, nor does it purport to be. It was not the writ the law prescribed and required to be issued in such cases, nor did it charge the state court with notice, and put an end to its jurisdiction of the prosecution. It is more like a writ of *certiorari,* and was probably intended to be such, but it was not addressed to the state court or

FEDERAL REPORTER, vol. 50.

petition for removal, and to issue the auxiliary writ of *certiorari* that was served by the United States marshal upon the clerk of the state superior court, and subsequently read in open court before the trial of the case. Upon this subject, I have nothing to add to what I have already said in my foregoing opinion, except to express my surprise at the legal conclusions of the distinguished court which has so often shown a liberal and enlightened policy in defining the ministerial functions of a

any of its officers. It was addressed to the marshal of the district, commanding him to make known the facts recited. Such writs must be addressed to the parties commanded and required by them to do the matters and things therein specified to be done. The state court was not bound to take notice of and treat the paper writing delivered to its clerk as the writ of *certiorari* (if that writ could have been appropriate in this case) prescribed by the statute. See appropriate forms of such writs in Dill. Rem. Causes, p. 87; Spear, Rem. Causes, pp. 109, 110. It appears that the petition of the defendants was not presented to the circuit court while it was in session, nor to the clerk thereof at his *office out of term time*, but it was presented to his deputy, who filed it in the clerk's office, and entered the cause on the docket of the court. The attorney general insisted on the argument that the deputy clerk could not receive and pass upon and file the petition and the certificate of counsel accompanying it. The presentation of the petition is important; it must be made to the court if it be in session, or to the clerk in vacation time. The statute so expressly requires. To what end is this required? Obviously to the end that the court or clerk may examine and allow it to be filed. It must be seen and adjudged that it is sufficient upon its face to serve the purpose contemplated by it. It must be *in substance a petition alleging the essential facts*, and accompanied by the certificate of counsel; and the court or clerk, as prescribed, must so determine. Granting that the deputy might act in the name of and for the clerk in all matters simply ministerial in their nature, he could not do so in matters judicial in their nature, requiring the exercise of his official judgment and discretion, unless authorized to do so by statute. In such matters the law charges the clerk to act for and by himself, and not by another. In such case the action of the deputy would be void, and of no legal effect. While the circuit court or the clerk must decide upon the sufficiency of the petition, and allow the same, if sufficient, it must appear by the writs issued to the state court that the circuit court or clerk allowed the petition: that it was filed, and the cause entered upon the docket of that court. Surely it cannot be that the circuit court has the authority to simply command the state court to surrender its jurisdiction of an action, and certify the record thereof to that court. Such procedure would be absurd, monstrous, and despotic. The process going from the circuit court to the state court must state the substance of the ground of the authority of the former, and the purpose of the command of the writ. It is the writ thus framed and duly served that perfects the removal of the action, and puts an end to the jurisdiction of the state court. The law does not invest the circuit court with arbitrary authority, nor does it intend to transfer the jurisdiction in particular cases from the state court to that court simply by the latter's command. The authority and pertinent action must appear in an orderly and authorized way. Here it did not appear that the circuit court in session, or the clerk in vacation time, had allowed the petition of the defendants to be filed. The contrary appears by the paper writing served upon the clerk of the state court. It appears that the deputy clerk of the circuit court allowed the petition, and filed it. This he had no authority to do. It cannot justly or reasonably be said that the circuit court alone must decide that he had or had not such authority. The state court must, in the very nature of the matter, decide, when a writ comes to it, the nature and purpose of the command contained in it, and that it, upon its face, comes from lawful authority. If the writ should upon its face show that it was unlawful and void, it would not—could not—serve the purpose of the law, and the state court would not—ought not to—recognize or act upon it. It is not sufficient to say that the circuit court would, in the course of procedure, afterwards correct the error, and remand the case. The state court is possessed of judicial authority, and it is its duty to part with its jurisdiction of cases only in the cases and in the way prescribed by law. Moreover, it is within its jurisdiction and authority to interpret and apply statutes of the United States in appropriate cases, and such statutes are binding upon it in pertinent cases and connections. There is no conflict, in contemplation of law, between the United States and state courts. Any seeming conflict arises from misapprehension and misapplication of the law, or from a willful purpose to pervert it. The state court must decide that it has or has not jurisdiction, and pertinent questions in that respect. Its errors may be corrected in an orderly, lawful way by an authoritative judicial tribunal. In this case it decided that the case before it was not removed to the circuit court of the United States, and proceeded to try and dispose of it in the ordinary course of procedure, and we think it did so correctly. Judgment affirmed.

clerk of a court, and in sustaining the actions of deputy clerks in facilitating the administration of substantial justice.

It is not my purpose to discuss at any length the questions of law considered by the state supreme court, which were not relied upon in the trial of the case in the court below. I desire simply to express my nonconcurrence, and offer a few reasons that influence me in my opinion. I certainly do not concur in the views of the supreme court in regard to a strict and technical construction of the removal statute referred to. Section 643, Rev. St. U. S. This statute is a part of the revenue system of the general government, and the United States supreme court has often decided that revenue statutes are remedial in their nature, and are to be construed liberally to carry out the purposes of their enactment; and what is implied in them is as much a part of the enactment as what is expressed. The intention of the lawmakers and the reason and object of the law are considerations of great weight in the construction of the statute. *Smythe* v. *Fiske*, 23 Wall. 374. In the opinion of the supreme court it is insisted that the writ of *certiorari* issued by the clerk of the circuit court in this case was not in proper form and properly directed. I will readily concede that such writ is not in conformity with a writ of *certiorari* at common law, but there is good reason in this case for a departure from such usual and established form. At common law the *certiorari* is a writ issued by a superior court having jurisdiction, directed to an inferior court, commanding it, through its clerk, to certify and return the record and proceedings in a particular case pending before it to the higher court. A court that has authority to command the performance of a duty has competent power to enforce obedience by compulsory process. Circuit courts of the United States are not higher courts than the state superior courts, and under the provisions of section 643 have no authority to command state courts and enforce obedience. Under this section, congress has not invested the circuit courts with any such coercive authority, but provision has been made for such courts to notify and require the state courts to certify their records and proceedings; and, if such requirements are disregarded, circuit courts can supply the record, and proceed to make disposition of cases removed without the requested assistance of the state courts. Under such circumstances, I am of opinion that the writ of *certiorari* in this case was appropriate, and is not justly subject to criticism for informality. It was issued under the seal of a court of competent jurisdiction, was delivered to the clerk of the state court by the marshal, was read in open court before the trial, respectfully gave information to the state court of the sufficient grounds upon which the circuit court assumed jurisdiction, and notified the state court of the duty imposed upon it by law. The purpose of issuing the writ of *certiorari* was not to require the state court to surrender jurisdiction and remove the cause to the circuit court, but simply to require a return of the record of the case, duly authenticated by its clerk. Under this statute the state courts have no essential agency in the removal of causes. All proceedings for removal are conducted in the circuit court, and the auxiliary

writs of *certiorari* and *habeas corpus cum causa*, served on the clerk of the state court, are not essential to removal, but are used after the circuit court has acquired jurisdiction for the purpose of notifying the state court of such assumed jurisdiction, and preparing the removed case for trial. The circuit court does not command the state court to surrender jurisdiction, for such jurisdiction is transferred to the circuit court by the operation of a paramount law. This operation of law cannot be justly regarded as arbitrary and despotic, as it was put in force by the legislative representatives of a free and enlightened people, and has been sanctioned by long experience and by the decisions of the highest judicial tribunal of the nation, and pronounced to be essential to the safety and efficient operation of the federal government. A case removed under this statute is tried in accordance with state laws, by a jury composed of the best citizens of the state, under the direction of a judge bound by official obligation to correctly administer such state laws.

It is further insisted in the opinion of the state supreme court that the writ of *certiorari* in this case is defective, in that it does not show on its face that the clerk had expressly adjudged the petition to be sufficient to serve the purpose contemplated. The statute declares in clear and express terms what representations of facts in the petition, and what verification, shall give the petition filed the force and effect of removing the case. The truth of such representations is matter of subsequent inquiry and determination. The only duty imposed upon the clerk is to examine the papers and see that the formal requirements of the law are complied with. He determines these matters by the ministerial acts of inspection and comparison, and manifests his approval in no other way than by filing the petition in his office, and entering the case on the docket. This implied approval clearly appears in the writ of *certiorari* that was issued in this case.

It is further insisted that "the process going from the circuit court to the state court must state the substance of the ground of the authority of the former, and the purpose of the command of the writ." This alleged requisite, if adopted in practice, would introduce a novel feature into a writ of *certiorari*, unknown to the common law. At common law, it was a prerogative writ,—a mandate of the crown,—issued by a court that was invested with a plenitude of power over all inferior courts of the realm, and had a right to command them to return authenticated records and proceedings in a particular case for trial or correction of errors. The courts of the United States derive authority to issue such a writ from the constitution and the legislation of congress; and the nature and purpose of the writ has been set forth in acts of congress, and in frequent decisions of federal courts. It seems to me that it would be unnecessary and improper for a circuit court of the United States, in removal proceedings, to inform a state court, in more specific terms than were used in this case, of the grounds of its authority, and the purpose of the writ, when such matters are disclosed by public and paramount law, presumed to be well known to all courts.

It is further insisted that the proceedings before the clerk of the circuit court were defective and insufficient to effect a removal of the case from the state court, in that no writ of *habeas corpus cum causa* was issued by said clerk. As the defendants were on bail, and not in actual custody, a writ of *habeas corpus* was unnecessary. The bail bond filed in the state court, by express provision of law, was effectual to secure the appearance of the defendants in the circuit court. The defendants made no application in their petition for a writ of *habeas corpus*. Before such a writ can be properly issued, it must be applied for, and the petition must allege that the party is imprisoned or detained against his will, without authority of law.

I have prolonged this discussion further than I at first intended. The judgment of the superior court against the defendants for the offense with which they were charged and convicted by a jury was not oppressive or unreasonable. I feel sure that the judge of the superior court, in his ruling, was prompted by a high sense of judicial duty. I entertain the highest respect for the state supreme court, and read with pleasure and benefit its able, learned, and instructive opinions; and I sincerely regret that an occasion has arisen which has produced a conflict of judicial opinion and authority.