COVERT v. TRAVERS BROS. CO.

(Circuit Court, S. D. New York. December 9, 1895.)

1. PATENTS—EFFECT OF PRIOR DECISION—EX PARTE INJUNCTION.
    A decision granting a preliminary injunction, where no counsel appeared for defendant, though some affidavits were submitted in his behalf, does not preclude the court, in a subsequent suit against a different defendant, from considering anew the question of the validity of the patent.

2. SAME—PLEADING—DEMURRER TO BILL.
    A patent manifestly invalid upon its face may be so declared on demurrer to the bill, but this power should be exercised with the utmost caution and only in the plainest cases. All doubts should be resolved in favor of the patent. Button-Fastener Co. v. Schlochtmeyer, 69 Fed. 592, followed.

3. SAME—INVENTION—ROPE CLAMPS.
    There is no invention in simply clamping an open ring of metal around a braided or twisted rope to prevent unbraiding or untwisting.

4. SAME.
    The Covert patent, No. 208,157, for an improvement in rope clamps, is void on its face as to the second claim for want of invention. The first claim, which is for a described method of connecting two parts of a rope, or two ropes, by clamping the same with one or more open metallic rings under pressure, discloses sufficient evidence of novelty and invention to prevent the same being declared invalid upon demurrer to the bill.

This was a bill in equity by James C. Covert against Travers Bros. Company for alleged infringement of letters patent No. 208,157, granted to complainant September 17, 1878, for an improvement in rope clamps.

Charles G. Coe, for complainant.
Arthur v. Briesen, for defendant.

COXE, District Judge. The patent in suit, No. 208,157, was, in 1885, before the court on a motion for a preliminary injunction. 25 Fed. 43. As the facts are now recalled the proceedings on that motion were ex parte in character. No one represented the defendant at the argument although some affidavits on his behalf were submitted. That decision does not preclude the court from considering the arguments which are now presented. That a patent, manifestly invalid upon its face, may be so declared on demurrer is now settled beyond dispute. The authorities bearing upon this proposition will be found collated in the recent case of Button-Fastener Co. v. Schlochtmeyer, 69 Fed. 592. It is also true that this power should be exercised with the utmost caution and only in the plainest cases.

If there is doubt it should be resolved in favor of the patent. New York Belting & Packing Co. v. New Jersey Car Spring & Rubber Co., 137 U. S. 445, 11 Sup. Ct. 193; Blessing v. Copper Works, 34 Fed. 753; Eclipse Co. v. Adkins, 36 Fed. 554; Manufacturing Co. v. Mosheim, 48 Fed. 452; Standard Oil Co. v. Southern Pac. Co., 42 Fed. 295; Hanlon v. Primrose, 56 Fed. 600; Drainage Construction Co. v. Englewood Sewer Co., 67 Fed. 141; Goebel v. Supply Co., 55 Fed. 825; Failey v. Talbee, 55 Fed. 892.

The patent, granted in 1878, contains two claims, as follows:

"(1) The herein described method of connecting one part of a rope adjacent to another part, or the ends of two ropes, by clamping the same with one or more open rings of metal under extreme pressure, as set forth.

"(2) One or more open rings clamped around a braided or twisted rope under pressure, to prevent unbraiding or untwisting, as set forth."

The second claim is for a metallic open ring clamped around a rope to prevent untwisting. In short, for a ring clamped around a rope. It is difficult to perceive how invention can reside in this claim. The patent itself recognizes the "well-known idea of twisting a wire around a rope" and many devices, such as corset-lacings, shoe-strings and whip-stalks naturally occur to the court where similar means have been used to produce similar results. The only object sought to be obtained by the use of the ring of this claim is to prevent untwisting or unbraiding. The split tube of the old corset-lace does that. There is nothing in the patent limiting the claim to ropes of large diameter. In fact the untwisting or unraveling feature is made to apply to "the ends of single cords." One who should cut off a section of the old split tube so that it would be a ring rather than a tube and clamp it around a corset-lace to perform precisely the same office as the tube, though less effectually, would have every element of the second claim. Untwisting was prevented in the old devices by clamping a split tube around the end of the cord or by winding it with wire or twine. The patentee accomplished the same result—untwisting—by substituting an open ring for the tube or wire of the old devices. It was a mere workshop expedient that might have occurred to anyone. It did not involve invention.

An entirely different proposition is, however, presented by the first claim. It is for the described method of connecting two parts of a rope, or two ropes, by clamping the same with one or more open metallic rings under extreme pressure. There is nothing suggested in the prior art that anticipates this claim. Certainly the court cannot say that it was not new in 1878. The court may take judicial notice of the old methods of looping and splicing ropes by winding and interweaving the strands and if the statement of the patent be true that the parts when clamped as described "cannot separate or have any endwise draw" it is manifest that the patented method is an improvement upon the old methods.

It is argued that the claim is void as covering merely the function of a clamping machine, but this proposition is not so obvious as to induce the court to hold the claim bad on demurrer. The court cannot say that anything existed prior to July, 1878, which would anticipate or defeat this claim. The proof may show that ropes

looped or spliced by the rings of the patent possess elements of strength and durability unknown before.  It is enough that the trial may result in a decree for the complainant.

As the bill states a cause of action it follows that the demurrer must be overruled, with leave to the defendant to answer within 20 days.