### LUTEN v. KANSAS CITY BRIDGE CO.

(Circuit Court of Appeals, Eighth Circuit. · December 23, 1922.)

No. 5919.

1. **Patents ⚙⟹310(9)—Ordinarily patent may be adjudged invalid only after hearing on proofs.**

   Want of invention or patentability may be adjudged on motion or demurrer, but only in exceptional cases, where the question is absolutely free from doubt. Ordinarily a patent should not be defeated without hearing on proofs.

2. **Patents ⚙⟹26(2)—New combination of old elements may be patentable.**

   A new combination of old elements, whereby an old result is obtained · in a more facile, economical, and efficient way, or whereby a new and useful result is secured, may be protected by patent as securely as a new machine or a new combination of matter.

3. **Patents ⚙⟹26(2)—Different location of old elements, securing better result, is patentable.**

   A new combination of old elements, in which, by a different location of one or more of the elements, a new and useful result is attained, or an old result is produced in a better way, is patentable.

4. **Patents ⚙⟹26(1)—Different combinations, which accomplish the same result, may each be patentable.**

   When the advance in an art toward the thing desired is gradual, and several inventors form different combinations, which accomplish the

---

⚙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

result sought with varying degrees of success, each is entitled to his own combination as long as it differs from those of his competitors and does not include theirs.

5. Patents ⊚⇒328—802,004 and 1,106,880, for false work for construction of bridge arches, not invalid on their face.

The Luten patents, No. 802,004 and No. 1,106,880, both relating to the construction and removal of false work, used in the construction of bridge arches, *held* not void on their face for lack of invention or patentability.

6. Patents ⊚⇒1—A "patent" is an adjudication that a device is the product of inventor's genius and a contract of the United States that he shall enjoy exclusive right to use and vend.

A patent is an adjudication by the officials of the Patent Office that the device of the combination is the product of the genius of the inventor and a contract of the United States that the patentee shall enjoy the exclusive right to use and vend the invention.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent (of Invention).]

Appeal from the District Court of the United States for the Western District of Missouri.

Suit in equity by Daniel B. Luten against the Kansas City Bridge Company. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 272 Fed. 533.

Russell T. MacFall, of Indianapolis, Ind. (Bowersock & Fizzell, of Kansas City, Mo., and Daniel Royse, on the brief), for appellant.

Samuel W. Sawyer, of Kansas City, Mo. (O. W. Pratt and Lathrop, Morrow, Fox & Moore, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The plaintiff below has appealed from an order of the District Court granting a motion made by the defendant that the plaintiff's bill in equity for infringement of patents be dismissed. The plaintiff has alleged in his complaint that he was the inventor and the owner of the exclusive right to use the improvements described therein and patented to him by letters patent No. 802,004, issued October 17, 1905, and letters patent No. 1,106,880, issued August 11, 1914, and that the Kansas City Bridge Company, the defendant, had infringed claims 1 and 3 of patent No. 802,004, and claims 2, 3, 4, 6, 8, 9, 11, 12, and 13 of patent No. 1,106,880, in the construction of a reinforced concrete bridge at Ellsworth, Kan.

The art to which these patented improvements relate is that of the erection and removal of the false work for the construction of arches of considerable span, such as 75 feet and more, of bridges made of stone, masonry, or reinforced concrete. The desideratum which the patentee and his competitors in the art were seeking was the combination of mechanical elements and the method of operation thereof, by means of which the false work for the erection of such a bridge might be constructed, used, and removed in the most economical, safe, inexpensive, and efficient way, so that, as the false work

was withdrawn after the completion of the arch, the stresses might be imposed upon it throughout its entire length and width, so slowly, gradually, and uniformly that its shape should be carefully preserved and the new arch should sustain no fall, shock, or injury as it settled into its final position and received its burden.

Such arches are built upon wooden arches or false work beneath them, and this false work is removed after their completion. There was difficulty and danger in this removal. If the false work were suddenly or too rapidly withdrawn, either in whole or in part, the new arches might fall. If the stresses which came upon it after its completion were not uniformly and gradually imposed on all the parts of the new arch as it settled into its permanent position, its shape might be changed, or parts of it might fall.

Prior to the alleged inventions of the patentee, the posts or uprights used to support the wooden arch of the false work were of sufficient size and cross-section to sustain beyond all doubt the weight of the arch of masonry or concrete, and in order to avoid the dangers of withdrawal of the false work those posts were based on greased wedges, or on sand in plugged boxes. When the concrete or masonry arch was complete, these wedges were driven out from beneath the uprights or posts, or, if they rested upon sand in boxes, the plugs were withdrawn from the boxes and the sand was permitted to run out. In these ways provision was made for the gradual settling of the new arch into its place. The plaintiff conceived, constructed, used, and obtained his patents for a new combination of mechanical elements, which, by a new method of operation, accomplished the construction and removal of the false work for such arches without the use of the large heavy uprights or posts, the greased wedges, and the sand and sand boxes.

His combination includes, instead of heavy posts or uprights of cross-section sufficient to support the new arch beyond doubt at all times, a plurality of light posts or uprights, each of which consists of two members, generally about six inches wide and two inches thick, the sum of the individual strength of which is sufficient to support the load which united they easily sustain. These two members stand on a secure footing. The upper end of one of them is nailed or otherwise fastened to one of the joists of the false work. The second member is fitted accurately under the joist by wedging or otherwise, is placed in such a position in relation to the first member as to form with it a post substantially T-shaped in cross-section. These two members are fastened together in this position by wire wound tightly around them, or by some similar means, so that each will strengthen the other while they are thus bound together, and so that they may be readily released from each other, so that each may separately buckle and yield under the same load, which, when they were bound together, had been easily sustained by them. These posts or supports are further strengthened by braces, which lie in a plane substantially parallel to the axis of the bridge and are attached to those of the members of the posts, which, under the applied load, will tend to buckle in the

direction of the axis of the bridge. In his specification the patentee stated:

"This construction results in extremely light posts of great strength, placed with minimum of labor, and with secure connections, yet which will serve as an extremely rigid false work support during the erection of any structure."

After the arch is completed and sufficiently set, the patentee causes the false work itself to settle and the stresses to be imposed upon the new arch gradually and uniformly, by selectively and· gradually withdrawing the braces and cutting the wires which hold together the two members of each of the posts, and permitting those members to buckle as they will under the load which, united, they supported. This buckling of the members discloses at a glance what parts of the arch, if any, are settling too rapidly or too slowly, and enables the superintendent immediately to apply the proper remedy to prevent any change of the shape of the arch, or the fall of or shock to any part thereof.

Some of the advantages which the patentee claims result from the use of his combination are that it accomplishes the desired result more surely, safely, and effectively than the use of wedges or sand boxes; that the driving out of the wedges is heavy and dangerous work, which may result in a sudden fall or shock to the new arch, or some part thereof; that sand in boxes may become wet and refuse to flow at all, or may flow from some of the boxes and fail to flow from others; that in the use of the wedges or sand it is difficult to perceive quickly what parts of the arch may be settling too rapidly or too slowly, until it is too late to prevent·shock, change of shape, and injury, while in the use of the plaintiff's combination the buckling members or posts show at a glance how each part of the arch is settling, and the selective handling of the wires and braces gives complete control of every part thereof at all times, and assures a slow, gradual, uniform, cushion settlement of the arch into its permanent position.

The patentee also claims that the use of his combination and method of operation is much less expensive than the use of the older methods; that it eliminates entirely the expense of using the wedges, sand boxes, and sand; that it substitutes for the heavy uprights or posts of the earlier art the light posts of two united, but separable, members, and thereby dispenses with a large force of laborers requisite to handle the heavy timbers, and enables two or three men to build and remove the false work; that it permits the repeated use in the construction of false work for successive bridges of the same light materials, while the heavier timbers of the earlier art are often useless for the construction of a second bridge and are expensive to transport.

Claim 2 is typical of the claims of patent No. 1,106,880. It reads in this way:

"A falsework centering comprising a joist supported by a compound compression member composed of a plurality of pieces, each having major and minor dimensions transverse to its length, the major dimension of one piece being arranged longitudinally of and overlapping the joist and transversely to the major dimension of another piece of the compression member, and a releasable connecting member to unite the pieces of the compression member."

Other claims in suit include the combination with the posts composed of two members with the braces which have been described.

In his complaint the plaintiff alleges that heretofore there have been produced by him or by others under his instructions and licenses more than 5,000 reinforced concrete bridges, in the construction of which the inventions described in the patents in suit were employed and practiced, that the use of them is of great value to him, and he prays for an injunction, accounting, and damages.

[1, 0] The court below dismissed the plaintiff's complaint on motion, without giving him an opportunity to sustain his petition by proof. A patent is an adjudication and a contract, an adjudication by a quasi judicial body, the officials of the Patent Office, that the device of the combination patented was the product of the genius of an inventor, and a contract of the United States with the patentee that he shall enjoy the exclusive right to use and vend the invention for 17 years. That adjudication and that contract, like the adjudications of other quasi judicial bodies, are sustained by a strong legal presumption that they are right, just, and valid, and unless they are without doubt void on their faces, they may not lawfully be set aside or disregarded without full proof of their invalidity. In view of these facts and this presumption, the established rule and practice in equity has become that: Want of invention or patentability may be adjudged on motion or demurrer, but only in exceptional cases, where the question is absolutely free from doubt. Ordinarily a patent should not be defeated without hearing upon proofs. Chinnock v. Paterson, P. & S. Tel. Co. (3d C. C. A.) 112 Fed. 531, 533, 50 C. C. A. 334; Merrimac Mattress Mfg. Co. v. Schlesinger (C. C.) 124 Fed. 237, 239; Caldwell v. Powell (3d C. C. A.) 73 Fed. 488, 19 C. C. A. 592; Higgin Mfg. Co. v. Scherer (6th C. C. A.) 100 Fed. 459, 462, 40 C. C. A. 491; Beer v. Walbridge (2d C. C. A.) 100 Fed. 465, 467, 40 C. C. A. 496; A. R. Milner Seating Co. v. Yesbera (6th C. C. A.) 111 Fed. 386, 388, 49 C. C. A. 397; Standard Oil Co. v. Southern Pacific Co. et al. (C. C.) 42 Fed. 295, 297; Star Ball Retainer Co. v. Klahn (C. C.) 145 Fed. 834; Mead Morrison Mfg. Co. v. Exeter Machine Works (D. C.) 196 Fed. 789, 790; Drainage Construction Co. v. Englewood Sewer Co., 67 Fed. 141, 142.

In A. R. Milner Seating Co. v. Yesbera, 111 Fed. 386, at page 388, 49 C. C. A. at page 399, speaking for the Circuit Court of Appeals for the Sixth Circuit, Judge Severens said:

"It is undoubtedly established law that the court may, in a clear case, dismiss, upon demurrer, a bill filed to establish a patent and to enforce a remedy for its infringement. Richards v. Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991. But this court has on former occasions in substance said that this ought only to be done when there is no room for thinking that any evidence could be adduced which would, if put into the case, alter the clear conviction of the court that there is no patentable invention in the production patented."

Judge Coxe, in Covert v. Travers Bros. Co. (C. C.) 70 Fed. 788, said:

"That a patent, manifestly invalid upon its face, may be so declared on demurrer is now settled beyond dispute. * * * It is also true that this

power should be exercised with the utmost caution and only in the plainest cases. If there is doubt it should be resolved in favor of the patent."

Judge Putnam, in Indurated Fibre Industries Co. v. Grace (C. C.) 52 Fed. 124, at page 128, called attention to the fact that the expressions in Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200, often cited to sustain the practice of demurring or moving to dismiss complaints in patent cases were used in a case in which there was a complaint, an answer, and proofs, so that in that case the complainant had had full opportunity to prove his invention and the validity of his patent. And Judge Shipman, in Blessing et al. v. Trageser Steam Copper Works (C. C.) 34 Fed. 753, called attention to the fact that in an action at law on a patent, where the question whether the improvement required inventive skill for its production exists, it is a question of fact for the jury, and said:

"In almost all cases the nature of the subject demands that the triers should be instructed by the testimony of those skilled in the art to which the patent relates, and therefore a demurrer for nonpatentability apparent upon the face of the instrument should not ordinarily be allowed. Teese v. Phelps, 1 McAll. 17. To decide, in advance of an opportunity to give evidence, that no evidence can possibly be given upon the question of invention which would permit the case to be submitted to the jury, seems to me to be ill-advised, except in an unusual case."

The question in this case, therefore, is whether it is clear, beyond all reasonable doubt, from the complaint, the patents, and the common knowledge of the art, of which the court may lawfully take cognizance, that no testimony or evidence could be produced that might convince that any of the combinations claimed and patented to the plaintiff rose to the dignity of an invention.

[2] A new combination of old elements, whereby an old result is obtained in a more facile, economical, and efficient way, or whereby a new and useful result is secured, may be protected by patent as securely as a new machine or a new composition of matter. Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 443, 31 Sup. Ct. 444, 55 L. Ed. 527; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 318, 29 Sup. Ct. 495, 53 L. Ed. 805; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 707, 45 C. C. A. 544; Seymour v. Osborne, 11 Wall. 516, 542, 545, 20 L. Ed. 33; Wm. F. Goessling Box Co. v. Gumb, 241 Fed. 674, 679, 154 C. C. A. 432; Sodemann Heat & Power Co. v. Kauffman (C. C. A.) 275 Fed. 593, 596; New York Scaffolding Co. v. Whitney, 224 Fed. 452, 457, 458, 140 C. C. A. 138.

[3] A new combination of old elements, in which, by a different location of one or more of the elements, a new and useful result is attained, or an old result is produced in a better way, is patentable. Sanders v. Hancock, 128 Fed. 424, 63 C. C. A. 166; Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36; New York Scaffolding Co. v. Whitney, 224 Fed. 452, 458, 140 C. C. A. 138. Some of the combinations claimed and patented in this case ap-

pear from the present record to have been new combinations of old mechanical elements, whereby the desired result was obtained in an easier, more economical, more efficient, and less dangerous way.

[4] When the advance in an art towards the thing desired is gradual, and several inventors form different combinations, which accomplish the result sought with varying degrees of success, each is entitled to his own combination, as long as it differs from those of his competitors and does not include theirs. Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 363, 369, 131 C. C. A. 504; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; McCormick v. Talcott et al., 20 How. 402, 405, 15 L. Ed. 930; New York Scaffolding Co. v. Whitney, 224 Fed. 452, 457, 458, 140 C. C. A. 138. The advance in the art here under consideration appears, from the complaint, the petition, and our present knowledge of it, to have been gradual, and several competitors seem to have formed different combinations which reached the desideratum with varying degrees of operating success.

[5] The principle or mode of operation of the plaintiff's combination which has been described here, by the use of which a plurality of light posts, each composed of two members set in the relation specified, fastened together by a readily releasable connection, and strengthened by sway braces, so as to support the arch until completed, and then by selective releases of the members of the posts from their fixed connections, so that they could and would, by slowly buckling, cause the completed arch to settle under constant and complete control of the operator, slowly, safely, and gradually into its permanent position, differed radically from the principles and modes of operation of upholding the arch by heavy timbers standing on wedges, or on sand in boxes, and settling it by driving out the wedges, or drawing out the sand, and this principle or mode of operation of the plaintiff's combination, and this combination itself, clearly appear from the allegations of the complaint, the patents in suit, and our present knowledge of the art to have been novel and useful, when the plaintiff conceived and reduced them to operative use, and when the defendant selected and used them.

If they had not been more useful than other combinations, it is not probable that the defendant would have chosen and used them to construct its bridge. This is a suit in equity between two private parties. The defendant used the plaintiff's patented combinations, when it was free to use others. Those combinations were protected by patents, and on the present state of the record the defendant certainly has no equity here superior to that of the plaintiff.

The construction of arches of stone, brick, and other like material was progressing for many years before the plaintiff conceived and applied to practical use the principles and combinations of his patents, but the skill of the mechanic never discovered or used either of them. The official experts of the Patent Office considered and adjudged that his conception and successful application of that principle and those combinations to the construction of the arches of bridges constituted invention, and in view of the established rules of law and equity, to

which reference has been made, and of the present record, the court is unable and unwilling to adopt the conclusion that there is no reasonable doubt that no evidence could be presented, or that no state of facts exists, or could be proved, that would convince that any of the patented combinations of the claims in suit evidenced invention or was patentable.

In view of this conclusion, this is not the time for the discussion or adjudication of the respective combinations of the various claims of the patent in suit, and they are left for consideration after answer and plenary proof.

Let the decree below be reversed, and let this case be remanded to the District Court, with directions to permit the defendant to answer.

Judge CARLAND participated in the consideration and concurred in the decision of this case, but died before the opinion was submitted to him.