## SMALLEY v. AUTO SPECIALISTS, Inc., OF SIOUX CITY, IOWA, et al.

(District Court, N. D. Iowa, W. D. August 1, 1925.)

No. 141.

**1. Patents ⬚91(4)—Patentee for automobile supports held original inventor.**

Under evidence, patentee of patent for supports for automobiles of the Ford type *held* the original inventor of the device, if it was not anticipated by prior patent.

**2. Patents ⬚328 — 1,504,154 for automobile supports held not anticipated.**

Smalley patent, No. 1,504,154, for *supports* for automobiles of the Ford type, *held* not anticipated by Murphy patent, No. 1,440,837.

**3. Patents ⬚328 — 1,504,154 for automobile supports held to involve invention.**

Smalley patent, No. 1,504,154, for supports for automobiles of the Ford type, *held* to involve novelty and invention, and not mere exercise of mechanical skill.

**4. Patents ⬚112(3) — Issuance raises presumption of novelty.**

Issuance of patent raises presumption that device embodies novelty and invention, placing burden of proof on one claiming absence thereof.

**5. Patents ⬚261—Manufacturing and selling under circumstances held infringement.**

It was infringement for defendant, knowing of the issuance of the patent, to continue to manufacture and sell the patented device, insisting on its right to do so without compensation, though, having a license from plaintiff under an older patent, it, with plaintiff's consent, used the improvement before patent was obtained, compensating him therefor.

**6. Patents ⬚287—Officers, acting only in official capacity, not liable for corporation's infringement of patent.**

Officers of a corporation, acting only in their capacity as its officers and agents, are *not* liable in damages for its infringement of patent.

In Equity. Suit by Charles E. Smalley against the Auto Specialists, Incorporated, of Sioux City, Iowa, and others. Decree for plaintiff.

G. M. Caster, of Lake Andes, S. D., and E. E. Wagner, of Sioux City, Iowa, for plaintiff.

A. H. Bolton, of Sioux City, Iowa, for defendants.

SCOTT, District Judge. This is a suit in equity by Charles E. Smalley, a citizen of South Dakota, against Auto Specialists, Incorporated, an Iowa corporation, A. F. Swanson, A. H. Eckerman, and Charles F. Swanson, officers and stockholders of de-

fendant corporation, all citizens of the state of Iowa, to enjoin defendants from infringement of plaintiff's letters patent No. 1,504,154, relating to a truss for automobiles, and contemplating an improvement in plaintiff's letters patent No. 1,424,685, and for damages and an accounting.

Plaintiff's bill, in substance, alleges: That, shortly prior to July 30, 1923, he invented certain new and useful improvements in supports for automobiles, primarily intended for automobiles of the Ford type, not previously invented or known and used by others before his invention thereof, and not patented or described in any printed publication in this or any foreign country more than two years prior to his application for patent, and not in public use or on sale in this country for more than two years prior to his application; and on said 30th day of July, 1923, plaintiff filed in the Patent Office of the United States and presented to the Commissioner of Patents his application and petition praying for the grant of letters patent for said invention, together with his specifications and drawings thereof, and as his claims therefor, in compliance with the laws of Congress in relation thereto. That on the 5th day of August, 1924, the United States of America did, by and through said Commissioner of Patents, regularly issue and grant to plaintiff letters patent under No. 1,504,154, for said invention. (A copy of said letters patent is exhibited on the bill.) That plaintiff is still the owner of said letters patent and all rights thereunder. That defendants continuously since the 15th day of August, 1924, have been and are now engaged in the procuring of the manufacture and in selling throughout the United States, by themselves and by and through various agents, the device and invention so patented to plaintiff, and that defendants and each of them are now, and during all of said time have been, infringing and violating the rights of plaintiff under said patent. That on the 15th day of August, 1924, plaintiff duly notified defendants in writing of the issuance to him of said letters patent, and demanded of them that they cease and refrain from infringing and violating plaintiff's rights thereunder, but that defendants and each of them have ever since failed and refused, and do now fail and refuse, to comply with plaintiff's demand, and, unless restrained, will continue to infringe plaintiff's rights to the plaintiff's great damage. Plaintiff thereupon prays for a writ of injunction restraining the defendants from further in-

fringing, and for an accounting and judgment for damages.

The defendants, in addition to the general issue, plead the five statutory defenses as follows:

(1) That, for the purpose of deceiving the public, the description and specification filed by the plaintiff in the Patent Office was made to contain less than the whole truth relative to his invention or discovery, or more than is necessary to produce the desired effect.

(2) That plaintiff surreptitiously or unjustly obtained the patent for that which was in fact invented by another, who was using reasonable diligence in adapting and perfecting the same.

(3) That the thing upon which plaintiff claims a patent had been patented or described in some printed publication prior to plaintiff's supposed invention or discovery thereof, or more than two years prior to his application for a patent therefor.

(4) That plaintiff was not the first and original inventor of any material and substantial part of the thing upon which he claims a patent.

(5) That the thing plaintiff claims a patent upon has been in public use or on sale in this country for more than two years before the date of plaintiff's application for a patent, or had been abandoned to the public.

And, in addition to the foregoing, the defendants plead:

(6) That defendant Eckerman invented and had prior knowledge of the thing patented by plaintiff, and said thing had been used by said inventor and the public generally at Sioux City, Iowa, and other places in the United States, prior to the time plaintiff applied for a patent thereon.

(7) That Moses E. Murphy of Talmo, Ga., invented and had prior knowledge of the thing plaintiff claims to hold patent upon, and that he procured a patent on said thing from the United States Government on January 2, 1923, bearing No. 1,440,837.

(8) That the claimed patent of plaintiff covers nothing new in art of combination, and is simply a recognition of principles of construction and combination which has been in use generally since the fifteenth century.

(9) That defendant Eckerman made all models and other necessary things used in the thing plaintiff claims a patent on, and that defendant Auto Specialists, Incorporated, made and sold said thing two years prior to plaintiff's application for patent; said sales and use of said article were general in the United States.

(10) That the same combination of plates and rods has been used and has been of common and general knowledge since the fifteenth century, and plaintiff has nothing of new and useful arts asserted in his alleged patent.

I may say at the outset that there was no substantial evidence offered on the trial tending to prove or apparently intended to prove any of the above defenses with the exception of three. There was evidence offered in an endeavor to prove (1) that the plaintiff was not the original inventor of the device patented to him; (2) that plaintiff's letters patent were anticipated by patent No. 1,-440,837, issued to Moses E. Murphy on January 2, 1923; and (3) that plaintiff's device was devoid of novelty and invention, and was, considering the existing state of the art, a result of the exercise of mere mechanical skill.

From the testimony it appears that on October 18, 1921, plaintiff filed application, serial No. 508,527, for letters patent on "new and useful improvements in trusses for automobiles," and that on the 1st day of August, 1922, there was issued to the plaintiff, Charles Smalley, letters patent on said application, No. 1,424,685, relating to improvements in trusses for automobiles; an object of the invention being to provide a simple and efficient truss which may be readily applied to the frame of a Ford automobile to brace the front cross-members of the frame.

The claims made in application serial No. 508,527, and purporting to be protected by patent No. 1,424,685, are set forth as follows:

"1. The combination with an automobile frame and a pair of fender irons extending therefrom, of a pair of bearing plates adapted to engage said frame, a pair of U-shaped members adapted to surround said fender irons, means for retaining said U-shaped members in position, a rod extending through said plates and means carried by said rod for retaining said plates in position.

"2. The combination with an automobile frame and a pair of fender irons extending therefrom, of a pair of bearing plates adapted to engage the side members of said frame, a pair of U-shaped members adapted to surround said fender irons and provided with threaded extremities, a pair of retaining plates engaging said U-shaped members and said bearing plates, means carried by said threaded extremities and engaging one edge

of said plates for securing said U-shaped members in position, a rod extending through said plates and means carried by said rod and engaging said retaining plates for securing said bearing plates in position.

"3. The combination with an automobile frame and a pair of fender irons extending therefrom, of a pair of bearing plates adapted to engage said frame and provided with recesses adapted to engage said fender irons, a pair of U-shaped members adapted to surround said fender irons and provided with threaded extremities, elongated retaining plates engaging said bearing plates and provided with transverse grooves receiving the said U-shaped members, means carried by said threaded extremities and engaging one edge of said plates for securing said U-shaped members in position, a rod extending through said plates and means carried by said rod and engaging said retaining plates for securing said bearing plates in position."

It further appears from the testimony that plaintiff Smalley had been experimenting and working on his invention for some years prior to the filing of said application, and during the month of September, 1921, was in the employ of the defendant corporation, which was engaged in merchandising certain automobile accessories and specialties. The plaintiff had brought to the attention of defendants his claimed invention, and they were considering the advisability of taking a license from plaintiff for the manufacture and sale of his invention, and on the 16th day of September, 1921, entered into a contract with the plaintiff by the terms of which defendant corporation, then existing under the name, Steam Tractor Auto & Manufacturing Company, Inc., was by the plaintiff, in consideration of a royalty therein reserved, licensed to manufacture and sell the plaintiff's device exclusively for the full term for which letters patent would be granted. The royalty reserved was $50 on the first 1,000 devices manufactured each month, $40 on the second 1,000, $30 on the third 1,000, $25 on each 1,000 devices thereafter manufactured each month, payable on the 30th day of each month, during the life of the assignment or license.

At or about the time of the execution of this contract, defendants criticised the device, claiming that it was too complicated and expensive to manufacture. At that time it was contemplated that connected with the truss rod there should be a bumper attached. Defendants inquired of plaintiff whether the device could not be changed, eliminating the bumper and simplifying it. Plaintiff testified that he explained to defendants certain of his experiments involving a hook which combined the same principles, and which could be made sufficiently strong for the purpose, and that thereupon they went to a local foundry, and he explained the hook, and that the pattern maker of the foundry under his direction produced a casting similar to Exhibit 3 in evidence, which is identical with the device later described in patent No. 1,504,154, except for a projection or rib upon its inner surface then designed to engage and be received within a small opening on the outer surface of the side member of the frame of a Ford car. Further it appears from the evidence that the local foundry manufactured a quantity of these hooks, and that defendants, assisted by the plaintiff as their employee, assembled a quantity of these hooks and truss rods, exhibited them at the Sioux City Interstate Fair, and put them on the market under the contract or license referred to; it being assumed that such device would be covered by the patent which plaintiff was about to apply for. The individual defendants, officers of the corporate defendant, testified that the plaintiff claimed that his application would result in what they termed a "basic" patent, and would protect defendants in the manufacture and sale of the hook device later patented as an improvement under the letters patent in controversy. According to defendants' testimony they were laboring under the impression that plaintiff was about to procure a patent which they called a "basic" patent, which would protect any sort of device designed to perform the functions of the device described in his application No. 508,527. The later device, which I have referred to as the hook device, proved successful and merchantable, and defendant corporation continued its manufacture, advertising and selling it throughout many states of the Union. During the period from September, 1921 until 1925, after the commencement of this suit, defendant corporation continued the manufacture of the device under arrangements with three foundries. During the period from September, 1921, up to the 15th day of August, 1924, defendant corporation appears to have made payment of the royalties under the contract of September 16, 1921.

On July 30, 1923, plaintiff filed his application, serial No. 654,681, in the United States Patent Office, accompanied by appropriate specifications and drawings, claiming

to have invented "new and useful improvements in supports." The application recited: "This invention relates to a truss for automobiles, and contemplates an improvement in patent No. 1,424,685 issued to me on August 1st, 1922. The invention aims to eliminate a number of parts described in said patent, and consequently simplify the construction with the advantage of reducing its cost in manufacture, as well as making it easier to apply to the vehicle."

The claim contained in the application is: "The combination with an automobile frame and a pair of fender irons, each having a relatively broad attaching portion secured to the frame, of a pair of substantially U-shaped members arranged to straddle one end of each attaching portion of said irons, the intermediate portion of each element projecting beyond the forward end of the frame and provided with an opening, a rod arranged transversely across the fender of the frame and received by said openings, nuts threaded on the ends of said rod, each element including a relatively long limb terminating to provide an obliquely disposed hooklike extremity adapted to extend downwardly over the attaching portion of the adjacent fender iron, whereby the truss rod is supported on the frame."

Letters patent were issued under this application on August 5, 1924, being the letters patent in controversy and numbered 1,504,154. The device described in this application and patent was identical with said Exhibit 3, that had been manufactured and sold by defendants, except the small rib on the inner surface had been eliminated because of a slight change of the surface of the member of the current models of the Ford car, which eliminated the groove into which said rib projected.

About the time of the issuance of letters patent No. 1,504,154, the defendants having discovered the Murphy patent, a controversy arose between the plaintiff and defendants. The defendants ceased further payment of royalties, and on or about August 15, 1924, the plaintiff served notice on defendants, demanding that they cease and refrain from infringing plaintiff's rights under said patent No. 1,504,154, and cease the manufacture and sale of the device therein described.

[1] Taking up for consideration the defenses now urged in their order, I first consider defendants' contention that plaintiff was not the original inventor of the device patented. I think the testimony fairly shows that the device in question was conceived by the plaintiff during his experiments preliminary to his application for patent No. 1,424,685, and that he brought his conception to the attention of the defendants, and that, while it may be true, as testified by some of the individual defendants, that Eckerman carved the first model with his jackknife of wood, if he did so, it was following the ideas given him by the plaintiff. Plaintiff's testimony in this respect is corroborated by the fact that the defendant corporation, almost immediately after a supply of the hook had been procured at the foundry, advertised the article in a local daily paper, attributing its invention to the plaintiff. I therefore conclude that plaintiff was the original inventor of the device patented, unless the same was anticipated by the Murphy patent.

[2] Was plaintiff's device anticipated by the device described in the Murphy patent? The Murphy device "comprises a rod of a length to extend transversely across the front of a Ford car radiator, and to project at its opposite ends beyond the sides of said radiator, being equipped at one end with a hook which is designed to engage the fender arm, a shoulder being provided at the base of the hook which is designed to rest against the crossbar of the car at its junction with the radiator. The other end of the rod which extends to the right of the radiator is threaded as shown, and passes through a hook carried by a connector which is constructed as shown, and is designed to be hooked behind the fender arm." This device is very materially distinguishable from plaintiff's device, in that the tension produced by the tightening of the nut at one end is exerted directly on the fender arm, and is necessarily limited by the rigidity or want of rigidity of the fender arm. On the other hand, the plaintiff's device is so formed and adjusted that the tension and pressure will be exerted directly against the side member of the frame of the car, thus giving greater support to the frame and a more sure bearing. The Murphy device it would seem would tend to exert tension and lay a direct burden upon the fender arm, whereas plaintiff's device secures a bearing and exerts tension against the side member of the frame, and by the hook tends to support and stiffen the fender arm. I do not think the Murphy device anticipates plaintiff's device.

[3] We are now brought to a consideration of the question whether plaintiff's device is devoid of novelty or invention and was the result of the mere exercise of me-

chanical skill. I think it must be confessed that plaintiff's device approaches quite near the twilight zone dividing these two spheres of action. But, though plaintiff's device is simple and is comprised almost exclusively of elements that are old, I think that plaintiff has conceived and produced a combination so peculiarly adapted to its particular purpose, and with such unique advantages, as to transcend the limits of exercise of mere mechanical skill and to fall within the scope of real invention. In arriving at this conclusion I have been constrained to consider as of much importance the peculiar structure of the Ford automobile. Unlike nearly all other cars, if not quite all others, on the Ford car there are no projections beyond the surface of the radiator. The entire surface of the radiator, with its surrounding attachments, presents substantially a plane perpendicular to the side members of the frame of the chassis. This feature of itself presents an obstacle to the attachment of truss rods or other stiffening or strengthening appliances. Plaintiff has met this situation by conforming the inner surface of his device to the surface and angles of the side member of the car, and combines in his device a bearing for the truss rod, a substantially U-shaped member to engage the platelike terminal of the fender arm and furnish a secure bearing against the side of the frame of the car, and also a projecting hook or finger reaching over the fender arm, with an inner surface parallel thereto and in part surrounding it, thus giving additional support to the fender arm, as well as furnishing a bearing to hold the device in place. The device, as I conceive it, has the following peculiar functions and advantages: (1) It is so adapted as to exert tension and pressure directly against the side member of the car frame; (2) it tends to support and stiffen the fender arm as well as the frame members; (3) it can be attached without preparation or work upon, or changes in, the frame of the car; (4) it can be attached and installed without tools, other than a wrench to tighten the nuts; (5) it requires no skill to install and attach it; (6) it can be attached and adjusted within the space of one or two minutes time. It seems to me that a device which meets all of these requirements, successfully reducing its mechanism to a single simple casting of almost nominal cost, is beyond the probable results of the exercise of mere mechanical skill.

In support of plaintiff's contention, counsel has cited Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527. Much of the reasoning in that case is applicable to the circumstances in the instant case. It is said, in Luten v. Kansas City Bridge Co. (C. C. A.) 285 F. 840: "A new combination of old elements, whereby an old result is obtained in a more facile, economical, and efficient way, or whereby a new and useful result is secured, may be protected by patent as securely as a new machine or a new combination of matter."

[4] The issuance of the patent raises a presumption that the device embodies novelty and invention. Sodemann Heat & Power Co. v. Kauffman, 275 F. 593 (C. C. A. 8th Circuit). The burden of proof was on the defendants to show want of novelty and invention. I do not think defendants have sustained this burden. A fair consideration of all the evidence relative to this device I think calculated rather to strengthen the presumption of law arising from the issuance of the patent.

[5, 6] The question now arises, Did defendant corporation infringe plaintiff's patent? That said defendant manufactured and sold plaintiff's device is of course without question. Did the defendant's contract, entered into September 16, 1921, in any manner protect it? No such reason has been suggested, and none occurs to me. The acts, circumstances, and relations of the parties back of August 15, 1924, may be laid aside. Up to that time the defendants were using the device, although not yet patented, with the consent of the plaintiff, and they compensated him for such use. But at about the time plaintiff procured the patent upon consideration defendant corporation apparently conceived the idea that it had no protection under the old patent, and declined to further pay royalties. But, notwithstanding it knew of the issuance of the later patent, it continued to manufacture and sell the device and insisted upon its right so to do without compensation. I think this was infringement. It follows that plaintiff is entitled to a decree enjoining further infringement by the defendants, and to recover from the defendant corporation, Auto Specialists, Incorporated, his actual damages by reason of such infringement. I do not think the circumstances of the case call, however, for the allowance of more than actual damages, and it has been stipulated between the parties that the contract of September 16, 1921, and the royalties therein reserved, and the statement of defendant corporation's account

with the several foundries which manufactured the device for defendant, and the time between August 15, 1924, and the date of trial may be taken as the basis of the plaintiff's recovery, if recovery is granted.

Decree therefore should be entered enjoining the defendants and each of them from further manufacturing or selling the device described in letters patent No. 1,504,154 unless with consent and license of the plaintiff, and that plaintiff have and recover of the defendant Auto Specialists, Incorporated, such sum as may be found due on accounting to be based upon the contract of September 16, 1921, and the statements of account stipulated into the record by the parties, and upon the stipulation of the parties. And that plaintiff further recover from said defendants and each of them the costs of suit. It appearing that the individual defendants acted only in their capacity as officers and agents of the corporate defendant, no money recovery should be allowed plaintiff as against these defendants.