FRANK ADAM ELECTRIC CO. v. COLT'S PATENT FIRE ARMS MFG. CO.
(two cases).

Nos. 12906, 12907.

Circuit Court of Appeals, Eighth Circuit.

April 4, 1945.

498

Edwin E. Huffman, of St. Louis, Mo., for Colt's Patent Fire Arms Mfg. Co.

John H. Sutherland, of St. Louis, Mo. (Clarence T. Case, of St. Louis, Mo., on the brief), for Frank Adam Electric Co.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

These appeals are from a decree in an action brought by Colt's Patent Fire Arms Manufacturing Company, as plaintiff,

against Frank Adam Electric Company, as defendant, for the alleged infringement of three patents issued to Joseph Sachs for automatic circuit breakers. The patents belong to the plaintiff. The decree appealed from determines that Claims 9 and 11 of United States Reissue Patent No. 20,018, granted June 23, 1936 (based on original Patent No. 1,812,842 dated June 30, 1931), are valid and infringed, and that Claims 7 and 17 of United States Patent No. 2,020,-333, issued November 12, 1935, and Claims 8 and 13 of United States Patent No. 2,-094,963, issued October 5, 1937, are invalid and not infringed. Each party has appealed from the portions of the decree which are unfavorable to it.

This case was tried before Judge Charles B. Davis, who died after the evidence had been taken but before the case was argued. The parties stipulated that the case be referred to a Special Master for decision upon the record made before Judge Davis. The District Court referred the case to Lawrence C. Kingsland, Esq., as Special Master. It was submitted to him upon the record and the briefs and arguments of the parties. Thereafter the Special Master filed his report, containing a detailed discussion and analysis of the issues, his findings of fact and conclusions of law, and his recommendation for a decree. The District Court, after overruling the objections of the parties to the Special Master's report and denying a motion of the defendant for a new trial, entered the decree appealed from, which is in exact conformity with the findings and recommendation of the Special Master.

Each of the patents in suit is for an automatic circuit breaker for use in protecting small motors, household electric appliances and lighting circuits against current overload. Such a circuit breaker is a substitute for the well-known switch and fuse plug and has the advantage of permitting easy restoration of an electric circuit which has been automatically broken. The plaintiff makes and sells circuit breakers conforming to its patents. The defendant makes and sells a competing device, which the plaintiff regards as an infringement of its patents.

The defenses urged by the defendant against the charge of infringement are (1) invalidity, for anticipation and want of invention; (2) noninfringement; and (3) unclean hands. The defendant contends

that, under the evidence and the applicable law, it was entitled to a decree dismissing the complaint upon the grounds: (1) that none of the claims in issue of the patents in suit is valid or infringed; and (2) that the evidence shows that the plaintiff had come into court with unclean hands. The plaintiff contends that it was entitled to a decree determining that each patent is valid and was infringed by the defendant.

■ While the Special Master, who tried this case upon the written transcript taken before Judge Davis, had no better opportunity to weigh the evidence than we have, this court will not try the case de novo. The findings of fact of the Special Master, which have been approved by the District Court, are conclusive upon this court in so far as they are not clearly erroneous. Stilz v. United States, 269 U.S. 144, 147–148, 46 S.Ct. 37, 70 L.Ed. 202; Williams Mfg. Co. v. United Shoe Machinery Corporation, 316 U.S. 364, 367, 62 S.Ct. 1179, 86 L.Ed. 1537; Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 278, 64 S.Ct. 593, 88 L.Ed. 721; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, 395; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199; Sears, Roebuck & Co. v. Talge, 8 Cir., 140 F.2d 395, 396; Sbicca-Del Mac, Inc. v. Milius Shoe Co., 8 Cir., 145 F.2d 389, 395–396.

■ With respect to the special defense of unclean hands, the Special Master found as a fact "That the plaintiff has not used the patents here in suit in any manner to disentitle plaintiff to maintain the suit, and that the defendant has failed to establish any facts in support of the defense of unclean hands." This finding, we think, is clearly justified by the evidence and is not erroneous.

■ We are also of the opinion that the findings and conclusions of the Special Master that Claims 7 and 17 of Patent No. 2,020,333 and Claims 8 and 13 of Patent No. 2,094,963 are invalid and not infringed, are sustained by the evidence. The careful analysis of the claims of these patents made by the Special Master in his report is convincing that they embodied no patentable subject matter over the prior art and constituted mere adaptations of prior art disclosures.

The vital questions in this case are whether the subject matter of Claims 9 and 11 of Reissue Patent No. 20,018 constituted invention in view of the prior art, and, if so, whether the accused device of the defendant infringed those claims.

The devices involved can more easily be visualized than described. The following are illustrations of the accused device and of the device covered by the Sachs Reissue Patent No. 20,018:

Since Claims 9 and 11 of Reissue Patent No. 20,018 are, in substance, the same, we shall quote only claim 11, which reads as follows:

"11. An automatic circuit breaker comprising in combination, a movable contact member biased toward its open-circuit position, a movable actuating member normally adapted to move the contact member to open or close the circuit, and a thermostatic bi-metallic strip serving in and of itself as a releasable latch normally movable with the actuating and contact members and normally operative for mechanically connecting them to enable the former to effect the movement of the latter, the said thermostatic bi-metallic latch being connected in the circuit so as to be automati-

cally deflected from its normal position upon the attainment of an abnormal current condition in the said circuit and to thus mechanically disconnect the contact member from the actuating member and permit the said contact member to automatically move to its open-circuit position independently of the actuating member."

Of Claims 9 and 11 of Reissue Patent No. 20,018, the Special Master in his report says:

"In simple language both claims are directed to a circuit breaker that comprises a specific means to make and break an electric circuit. The structure includes a movable contact member normally tending to open. The movable contact member is operatively connected with an actuating member by which it may be normally manually moved to open and close the circuit. A thermostat, connected for movement with the movable contact carrier, alone constitutes a latch to connect the actuator with the movable contact member whereby the actuator may move the movable contact carrier.

"The theromstat is in the circuit controlled by the device, and by deflection due to a current overload unlatches the connection between the actuator and movable contact carrier to permit the contact carrier to move to open the circuit independently of the actuator.

"The critical element of the claims is the arrangement of the thermostat. It serves as the releasing latch permitting independent movement of the movable contact carrier when the condition of the circuit warps the thermostat under abnormal condition of the circuit, and connects the actuator and movable contact carrier during normal operation."

The Special Master also says: "Plaintiff's claim to patentable novelty is based upon the contention that the patent now considered is the first disclosure of the concept of an automatic circuit breaker including an electro-thermally affected element mounted in the circuit, that is carried by the movable contact member and which element acts itself as the means for normally latching the movable contact member with an actuator for manual operation; and which latch is released when subjected to an abnormal condition, so that upon release of the thermal element itself, the switch opens at once, and other movements

of other parts are not required to effect the opening, and do not influence it."

The releasable latch of the patented device and its operation are illustrated by the following drawings:

Illustrating Normal and Automatic Release Relation of Parts of Sachs Reissue Pat. 20,018.

The state of the art at the time Sachs entered the field is accurately described by the Special Master in his report as follows:

"It is entirely clear from this record that at the time of the advent of the patent under consideration, the circuit breaker art was crowded almost to the point of suffocation. There were many workers in this field, and the patentee here was only one of many. The art fully understood that any circuit breaker of the general automatic type here involved required some means for manually opening and closing the circuit, by manipulating the device to bring a movable contact into and out of closed circuit position; and some form of releasable latch mechanism was commonly provided, which was controlled by an electro-responsive element in the circuit, operable to release upon an abnormal condition in the circuit. Speaking generally, it was also recognized that the electro-responsive element could optionally be of the fuse, magnetic or thermostatic type. It was also common to provide means to prevent reclosing of the circuit during an abnormal circuit condition, the so-called trip free feature. And it is with the full appreciation of this state of the art, that the question of invention must be considered."

The Special Master in his report has made a careful analysis of the main prior

art references.[1] His conclusion is that the prior art does not disclose "the thermostat that alone constitutes the latch operable in the manner defined" by Sachs. We shall accept the view of the Special Master that the releasable latch of Sachs differed from anything shown by the prior art. In support of his determination that this difference disclosed patentable invention, the Special Master says:

"This difference from the prior art, having been ascertained, the problem arises as to whether it is a patentable difference, or whether it is merely a modification within the range of mechanical skill. The distinction between invention and mere mechanical skill is one of fact, but one usually difficult to decide in the ordinary patent case from the orthodox proof usually submitted. Here we have defendant's expert asserting that it was well within the knowledge of the art to employ a bi-metallic strip, and to associate it in the combination of the claims. Opposed to this is the evident considered action of the Patent Office holding the claims here in issue patentable because of the features that are common to the claims and to the accused structure. Defendant did not employ the structures of the prior art, but adopted the structure and relationship of the thermostat to the other elements of the combination, wherein it has been found the patented structure differed from the prior art.

"The applicable law is summarized by the Supreme Court in the classic case of Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 447, 55 L.Ed. 527:

" 'Knowledge after the event is always easy, and problems once solved, present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by merely skilful attention. But the law has other tests of the invention than subtle conjectures of what may have been and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration. And it recognizes degrees of change, dividing invention into primary and secondary, and as they are, one or the other, gives a proportionate dominion to its patent grant. (page 437)

\* \* \* \* \* \*

" 'It (i.e. defendant charged with infringement) gives the tribute of its praise to the prior art; it gives the Grant tire the tribute of its imitation, as others have done. \* \* \*' (page 441)

"In the present case the novel relationship and function of the thermostat was the basic and dominating feature of the commercial devices of both the plaintiff and the defendant. Both devices have supplied a commercial need for a small automatic circuit breaker for use in protecting small motors and household lighting circuits against overload in the circuit. The simplicity and advantages of the structure are apparent and the fact that it has found a commercial outlet in substitution for the old form of knife switch fuse plug devices, further weighs in favor of invention. Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Du Bois v. Kirk, 158 U.S. 58, 15 S.Ct. 729, 39 L.Ed. 895.

"The burden rests with the defendant to establish invalidity. Lehnbeuter v. Holthaus, 105 U.S. 94, 26 L.Ed. 939; Luten v. Kansas City Bridge Co., 8 Cir., 285 F. 840; Detroit Motor Appliance Co. v. Burke, D.C., 4 F.2d 118.

"Under the facts of the present case and applying thereto such aid in weighing the issue of invention against mechanical skill as authoritative precedents afford, it must be concluded that Claims 9 and 11 of Reissue Patent No. 20,018 define patentable invention and are, therefore, valid."

If the evidence in this case had established that the releasable latch of Sachs constituted the final step in the solution of the problem of designing a small, efficient, automatic circuit breaker for use in houses, or that the latch filled a long felt want which skilled mechanics familiar with the art had been unable to fill, or that it represented a significant advance over the prior and contemporaneous art, we would think that the Special Master's conclusion that Sachs' contribution constituted invention should be sustained. See Sbicca-Del Mac v. Milius Shoe Co., 8 Cir., 145 F.2d 389, 394–395; Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275,

---

[1] The defendant's principal prior art references are the German patents No. 420,-028 and No. 385,720, and United States Patents Soulliere No. 319,635, and Morris and Lister No. 926,584.

279, 64 S.Ct. 593, 88 L.Ed. 721; Universal Oil Products Co. v. Globe Oil & Refining Co., 322 U.S. 471, 486–487, 64 S.Ct. 1110, 88 L.Ed. 1399. There is no evidence that Sachs' contribution to the circuit breaker art was at all outstanding or that it solved any serious problem which had baffled solution. Except for the self-serving recitals in the specifications of the patent and such inferences as may be drawn from the issuance of the patent, there is, we think, no basis for concluding that Sachs did anything more than design a simple, practical and economical small circuit breaker by using mechanical expedients which were known to the art or might be gleaned from it by a skilled mechanic learned in the art. Moreover, we think that there is no basis in the evidence for concluding that it would have been beyond the skill of the calling, at the time Sachs entered the field, to design a circuit breaker like the accused device.

■■ That a contribution to an art is new and useful, does not necessarily mean that it is patentable. The contribution must reveal invention or discovery. No matter how useful one's contribution may be, to be patentable it must reflect inventive genius and not merely the expected skill of the calling. "* * * more ingenuity must be involved than the work of a mechanic skilled in the art." Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 90–91, 62 S.Ct. 37, 86 L.Ed. 58; Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69, 79, 54 S.Ct. 586, 78 L.Ed. 1131; Sbicca-Del Mac, Inc. v. Milius Shoe Co., supra, page 394 of 145 F.2d.

■ The bi-metallic strip which is the current-responsive element or thermostat in the Sachs combination, performs substantially the same function as the thermostatic element to be found in combinations of the prior art. It is the element which permits the contact carrier to remain in the closed circuit position under normal current conditions and which releases the contact carrier so that the circuit is broken when current conditions become abnormal. To conceive and to reduce to practice the idea that this bi-metallic strip, the main purpose of which is to release the contact carrier in case of overload, could also be used as a latch to hold together the actuating element and the contact carrier for the purpose of manual control and of maintaining a closed circuit under normal conditions, did not, in our opinion, rise to the dignity of invention. Bi-metallic strips were old in the art, as were, also, releasable latches. Such strips had been used as thermostatic controls in circuit breakers when it was desirable that the circuits should not be broken instantaneously upon the occurrence of an overload. Obviously, the more direct the connection between the thermostat and the release mechanism of the contact carrier, the quicker the release would take place in case of a current excess. On the other hand, if the designer of a circuit breaker desired to provide for more of a time lag than would be furnished by a direct connection between the thermostat and the release mechanism of the contact carrier, the use of interposed links or levers would be indicated. To eliminate the interposed links would seem to be within the competency of a skilled artisan who knew what was wanted. It is not invention to produce a device which a skilled mechanic would produce when required to effectuate a given result. H. D. Hudson Mfg. Co. v. Standard Oil Co., 8 Cir., 60 F.2d 377, 379; Tropic-Aire, Inc. v. Sears, Roebuck & Co., 8 Cir., 44 F.2d 580, 591.

■■ The determination that Claims 9 and 11 of Reissue Patent No. 20,018 are valid and infringed, we regard as being inconsistent with implications to be drawn from the opinions of the Supreme Court in Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 90–91, 62 S.Ct. 37, 86 L.Ed. 58; Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731; Universal Oil Products Co. v. Globe Oil & Refining Co., 322 U.S. 471, 486–487, 64 S.Ct. 1110, 88 L.Ed. 1399; and Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 65 S.Ct. 647. Compare Picard v. United Aircraft Corporation, 2 Cir., 128 F.2d 632, 636 (certiorari denied, 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524). We think that the Supreme Court, in its more recent opinions in patent cases, has indicated that presumptions based upon the issuance of patents or upon the mere fact that a patented device differs from prior art disclosures in structure or design, may not be used to transmute the products of mechanical skill into patentable inventions. It must be as much the duty of the court in a patent case to protect the public against having to pay tribute to a patentee who is not in any true sense an inventor or discoverer, as to protect the patent rights of one who is a real

inventor. See Cuno Engineering Corporation v. Automatic Devices Corporation, supra (page 92 of 314 U.S., 62 S.Ct. 37, 86 L.Ed. 58); Muncie Gear Works, Inc. v. Outboard, Marine & Mfg. Co., 315 U.S. 759, 768, 62 S.Ct. 865, 86 L.Ed. 1171.

Our conclusion is that the finding and decree of the District Court that Claims 9 and 11 of Reissue Patent No. 20,018 are valid and infringed are not justified by the evidence. To that extent the decree is reversed and the case is remanded with directions to dismiss the plaintiff's complaint for want of equity.